[No. 68370-1. En Banc.]
Argued June 15, 2000.     Decided October 12, 2000.

THE STATE OF WASHINGTON, *Respondent*, v. HANS W. GREIFF, *Petitioner*.

912

*Hugh M. Spall, Jr.*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Michael G. McCarthy, Deputy*, for respondent.

ALEXANDER, J. — Hans Greiff was charged with second degree rape of a 16-year-old young woman. The case proceeded to trial and ended in a hung jury. The case was tried again and Greiff was convicted. In an unpublished opinion, the Court of Appeals upheld the conviction. Greiff claims here that the trial court (1) incorrectly denied his motion for a mistrial, and (2) committed reversible error in admitting the testimony of the alleged victim to the effect that another person told her that a forensic rape examination produced

no results because it had been performed incorrectly. For reasons stated herein, we affirm Greiff's conviction.

## I. FACTS

On the cold and snowy evening of February 7, 1997, J.E. left her father's home in Selah, following an argument during which J.E. was told by her father that she was no longer welcome to reside with him. After departing, J.E. headed on foot for her boyfriend's house in Yakima.

While en route to her boyfriend's home, J.E. was approached by a car which contained Hans Greiff, the driver, and Greiff's passenger, Rick Marshall. The two men offered J.E. a ride and she accepted. The three persons then made their way to Greiff's home, ostensibly for the purpose of letting J.E. use Greiff's telephone. When they arrived at Greiff's home, Greiff told J.E. that she better not use the telephone because "his friend was heard over the phone." 2 Verbatim Report of Proceedings (VRP) at 111. Greiff, Marshall, and J.E. then proceeded to listen to some music and look at old photographs. Eventually, Marshall and Greiff left the house, leaving J.E. in the home by herself.

Greiff later returned to the home by himself. Shortly after his return, Greiff came into the living room, where J.E. was located. Greiff, who was wearing only "thong" underwear, resumed looking at photographs with J.E. 2 VRP at 114. After some small talk, Greiff attempted to kiss J.E. She rebuffed his advances and told him, "no." 2 VRP at 114. J.E. then went to bed in one of the back bedrooms. A few minutes later Greiff entered the bedroom in which J.E. was located and asked her "if the stereo was too loud." 2 VRP at 116. She indicated that she told him "no, it was fine, I was all right." 2 VRP at 116. Greiff then left the room but returned a few minutes later. This time, he had a blanket around him and he told J.E. that it "was cold in his room." 2 VRP at 116. He indicated that it would be better if they slept in the same bed so that they "wouldn't freeze." 2 VRP at 117. According to J.E., Greiff then took hold of her hands and removed her

sweatpants. She said that she resisted Greiff's efforts and attempted to free herself from him, but was unsuccessful. Greiff, according to J.E., engaged in oral intercourse with her and then vaginally raped her. J.E. testified that during the attack, she was "crying and screaming" while Greiff was telling her that he knew she "wanted it." 2 VRP at 124. After the attack, J.E. got up to leave but not before Greiff said he would "kill me if I told anybody." 2 VRP at 124. J.E. then put on her clothing and left Greiff's dwelling.

About 20 minutes later, Officer Robert Marlow of the Yakima Police Department was dispatched to a parking lot where J.E. had been found wandering about. Marlow took J.E. to the police station and attempted to find her a place to pass the remaining hours of the morning. J.E. was eventually taken to a group home in Yakima where she stayed for the balance of the morning. Later that day J.E. was sent to a group home in Sunnyside where a child protective services caseworker informed her that she would be sent to Ohio to live with her adoptive parents.[1] J.E. told the worker that she did not want to return to Ohio.

The following day, J.E. informed an employee at the group home that she had been sexually assaulted by Greiff. The person to whom J.E. spoke convinced J.E. to go to a hospital for an examination. J.E. agreed with the suggestion and was examined at a hospital by a physician, who told her to come back a few days later for the results from the rape exam. According to J.E., when she returned to the hospital she was told that no results were available because the examining physician had performed the test incorrectly. A few days later, J.E. spoke with a Yakima Police Department detective and gave a description of the events surrounding the alleged rape that comported with the above factual recitation.

On February 20, 1997, the Yakima Police Department detectives questioned Greiff about the alleged rape of J.E.

---

[1] J.E.'s adoptive parents had apparently expelled J.E. from their home in Ohio and, consequently, she headed west to live with various family members, the last of whom was her natural father.

Greiff's statement to the police differed somewhat from J.E.'s narrative. According to Greiff, when he picked up J.E. he told her that he ran a "clean and sober house" and that he was a "Christian" who was "studying the Bible" and that there would be "no funny stuff at all." Statement of Hans Greiff (Feb. 20, 1997) at 4. Greiff indicated that he went to bed later that evening but conceded that he later brought some bed covers into J.E.'s bedroom because he was concerned that she might be cold. *Id.* at 5. When the detectives inquired as to why Greiff entered J.E.'s room without clothing, he responded that "I don't sleep in my clothes." *Id.* He also told the detectives that he got into bed with J.E. because he was "cold" and that he took J.E.'s clothing off because "it's not right for people to sleep with their clothes on and that's just kinda of a rule I have at the house." *Id.* at 7. Greiff claimed that despite the fact that he slept in the bed with J.E., he did not touch her or have contact of a sexual nature with her. *Id.* at 8.

The State of Washington thereafter charged Greiff with second degree rape. The case proceeded to a jury trial at which Officer Marlow testified to the effect that when he first came into contact with J.E. he asked her several times if she had been sexually assaulted. He indicated that each time he asked J.E. this question he received a negative response. Ultimately, a mistrial was declared because the jury was unable to reach a unanimous verdict.

The State refiled the charge against Greiff, and the case proceeded to trial for a second time. At the commencement of the second trial, Greiff's counsel made the following remarks during his opening statement to the jury:

> Officer Marlow will testify that, because of the lateness of the evening, he asked [J.E.], have you been sexually assaulted. And Officer Marlow will testify that [J.E.] said no.
>
> Officer Marlow, based on his training, asked follow-up questions along the same lines: Have you been sexually assaulted? I'm not using his exact words, and I don't want you to take what I am saying as evidence in the case. He will testify as to questions that he asked, but he asked her two or three times in

various ways, have you been sexually assaulted and has something happened to you, have you been raped, and each time [J.E.] responded by saying no.

Suppl. VRP at 8. Although Greiff's counsel was clearly relying on Officer Marlow's testimony from the previous trial when he made his opening statement, he was confronted with testimony at the second trial that differed significantly from the testimony that Marlow gave at the earlier trial. Specifically, when asked by the State if he had asked J.E. "about a sexual assault in Yakima," Marlow responded, "I don't believe that I did." 2 VRP at 81-82. Greiff's counsel, who claimed to be surprised by this testimony, attempted to impeach Marlow with his testimony from the previous trial as follows:

[Defense Counsel:] Did you ask her if she had been sexually assaulted?

[Officer Marlow:] No, I don't believe I did.

[Defense Counsel:] Officer Marlow, you had the opportunity to testify at a prior proceeding in this case. Do you recall that?

[Officer Marlow:] Yes, I do.

[Defense Counsel:] And do you recall testifying at that prior proceeding that you asked [J.E.] if she had been raped?

[Officer Marlow:] Yes.

[Defense Counsel:] And do you recall testifying at that prior proceeding that you asked [J.E.] several times in several different ways if she had been raped or sexually assaulted?

[Officer Marlow:] Yes.

[Defense Counsel:] Do you recall that testimony?

[Officer Marlow:] Yes, I do.

[Defense Counsel:] And do you recall testifying to each of those questions [J.E.] replied no?

[Officer Marlow:] Yes.

[Defense Counsel:] Now, is it true that you asked her those questions and she gave those responses?

[Officer Marlow:] No, it's not.

[Defense Counsel:] What has changed your testimony today?

[Officer Marlow:] I got another case, another incident, confused. I wasn't quite aware of which case we were talking about when you and I talked on the phone, I believe on the day of that hearing, and it was a mistake that I made on that part.

2 VRP at 82-83.

Greiff's counsel then moved for a mistrial, asserting that Officer Marlow's testimony had "sabotaged" his opening statement. 2 VRP at 210. He argued that since the prosecutor knew that Marlow's testimony would differ from his prior testimony, he had an obligation to inform Greiff of the expected change in the testimony. The trial court denied the defense motion, but ruled that a transcript of Marlow's previous testimony would be admitted as an exhibit, "and the jury may consider his prior testimony at the earlier hearing in its entirety in order to judge his credibility." 2 VRP at 211.

The State called J.E. to testify. During direct examination, the deputy prosecutor asked J.E. if she knew what the results were from the examination that was performed at the hospital. Over defense counsel's objections, J.E. was allowed to testify that "I was told that the doctor had did the test wrong, and so there was no results." 2 VRP at 133.

The jury found Greiff guilty of second degree rape. Greiff appealed his conviction to the Court of Appeals, Division Three. That court affirmed Greiff's conviction, concluding that the trial court did not abuse its discretion in denying Greiff's motion for a mistrial and in allowing J.E. to testify about what she was told with respect to the lack of test results. We thereafter granted Greiff's petition for review. *State v. Greiff*, 139 Wn.2d 1028 (2000).

## II. DISCUSSION

### A. Denial of Mistrial

Greiff first contends that the trial court erred in denying his motion for a mistrial. In support of this contention, Greiff claims here that the State's failure to inform him

about the expected change in Officer Marlow's testimony constituted a violation of CrR 4.7(a)(1)(i) which, in turn, resulted in denying him due process of law and effective assistance of counsel. He argues, therefore, that "[t]he trial court committed prejudicial error" in denying his motion for a mistrial. Pet. for Review at 14. The State responds that a trial court has broad discretion in ruling on motions for a mistrial and it did not abuse that discretion in denying Greiff's motion.

■ At the outset, we observe that the State's failure to notify Greiff of the expected change in Marlow's testimony was a violation of CrR 4.7(a)(1)(i). That rule states, in pertinent part, that:

> [T]he prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:
>
> (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses[.]

We reach the conclusion that the State violated this rule because the record shows that the deputy prosecuting attorney assigned to this case knew as early as the day before the second trial that Officer Marlow's testimony would differ in a significant way from his testimony at the first trial. Nevertheless, he neglected to inform Greiff's counsel about the expected change in testimony. Although the State implies that it did not have an obligation to inform Greiff of the change in Marlow's testimony,[2] we reject that argument because the State has a continuing duty to disclose discoverable information. See CrR 4.7(h)(2);[3] *see also State v. Brush*, 32 Wn. App. 445, 455, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983). The

---

[2] In its supplemental briefing, the State argues that "the failure to advise defense counsel concerning Officer Marlow's refreshed recollection, *if error*, was harmless. . . ." State's Suppl. Br. at 12 (emphasis supplied).

[3] CrR 4.7(h)(2) states:

expected change in the substance of Marlow's testimony was certainly information that was discoverable under CrR 4.7(a)(1)(i). There is, in short, no question that a violation occurred.

With the State's violation of CrR 4.7 in mind, we turn to Greiff's arguments that the violation of the rule resulted in a denial of due process and rendered the assistance of his counsel ineffective.

## 1. Due Process

■ ■ Greiff asserts that due process considerations required the trial court to declare a mistrial because "THE STATE IMPERMISSIBLY AFFECTED THE JURY VERDICT BY FAILING TO DISCLOSE THAT OFFICER MARLOW WOULD CHANGE HIS TESTIMONY[.]" Pet. for Review at 8. "Under the due process clause of the Fourteenth Amendment,[4] it must be demonstrated that the State's prosecution . . . comported with prevailing notions of fundamental fairness such that [the defendant] was afforded a meaningful opportunity to present a complete defense." *State v. Lord*, 117 Wn.2d 829, 867, 822 P.2d 177 (1991). The State's disobedience to a discovery rule can constitute a violation of a defendant's right to due process. *See State v. Bartholomew*, 98 Wn.2d 173, 205, 654 P.2d 1170 (1982), *rev'd on other grounds*, 463 U.S. 1203 (1983). The due process clause does not, however, compel a trial court to declare a mistrial in every instance where the State has violated a discovery rule. As we have noted previously, a

---

If, after compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, the party shall promptly notify the other party or their counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

[4] In his petition, Greiff does not rely on the due process clause contained in article I, section 3, of our state constitution. ("No person shall be deprived of life, liberty, or property, without due process of law.") We therefore limit our discussion to the due process clause of the Fourteenth Amendment. *See State v. Gunwall*, 106 Wn.2d 54, 62, 720 P.2d 808 (1986) (noting that this court will not discuss state constitutional provision unless it has been "thoroughly briefed and discussed").

mistrial should be granted "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994).

█ The grant or denial of a motion for mistrial is reviewed by this court through an abuse of discretion lens. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). A trial court's denial of a motion for mistrial "will be overturned only when there is a 'substantial likelihood' the prejudice affected the jury's verdict." *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994). In determining whether the effect of an irregular occurrence at trial affected the trial's outcome, this court examines: (1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). After applying the *Hopson* criteria here, we reach the conclusion that there is not a "substantial likelihood" that the State's violation of CrR 4.7 affected the outcome at trial.

In reaching that conclusion we are not unmindful of Greiff's contention that the irregularity in this case is quite serious. He argues that the credibility of his counsel was "undoubtedly damaged" because the attorney promised to elicit certain testimony from Officer Marlow and then failed to deliver on that promise. Pet. for Review at 10. Greiff further asserts that his defense counsel's wounded credibility hurt him when the attorney attempted to impeach J.E. because, according to Greiff, "for the impeachment to be credible, the jury had to believe that Mr. Greiff's counsel was accurately portraying his previous questions to J.E. [from the previous trial] and her responses to the questions." Pet. for Review at 10-11.

This court has previously stated that "the trial judge is best suited to judge the prejudice of a statement . . . ." *State*

*v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). In our judgment, the record supports the trial judge's conclusion that the inconsistency between the opening statement and the testimony of Officer Marlow was not significantly prejudicial to the credibility of Greiff's counsel. We agree with the trial judge who indicated at the time the motion for mistrial was denied that it is "obvious to me from my knowledge of what occurred in hearing Officer Marlow's testimony." 2 VRP at. 211. Although the trial judge did not expand on what he believed was "obvious," we presume that he made the commonsense conclusion that it would be "obvious" to the jury that the reason Marlow did not testify the way Greiff's counsel said he would is because Marlow had made a mistake in his earlier testimony. This is certainly made clear by Marlow's testimony in response to defense counsel's questioning. 2 VRP at 82-83.

Moreover, even if Greiff and his counsel sustained some slight prejudice because of the disconnection between Greiff's counsel's opening remarks and Marlow's testimony, the trial judge took appropriate curative steps to lessen any negative impact the opening statement may have had on Greiff's counsel's credibility. Specifically, it admitted Marlow's testimony from the previous trial and instructed the jury to consider it in judging Marlow's credibility. By doing so, the trial court made it clear to the jury that the inconsistency between the opening statement and Marlow's testimony came about because of Marlow's eleventh-hour epiphany and not because of any deceptive tactics practiced by Greiff's attorney.

■ Finally, in assessing the effect of an irregularity this court considers "whether the trial court properly instructed the jury to disregard it." *Hopson*, 113 Wn.2d at 284. Here, the trial court did so by instructing the jury as follows:

> "The attorneys' remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence. *Disregard any remark, statement or argument that is not supported by the evidence or the law as stated by the court.*"

3 VRP at 248 (emphasis supplied). As per the trial court's instructions, the jurors were to disregard the remarks of Greiff's counsel about Officer Marlow's testimony if they thought the remarks were unsupported by the evidence. Since the remarks did not find support in Marlow's testimony, we assume that the jury did as it was instructed and disregarded the defense counsel's opening remarks to the extent they were not borne out by testimony at trial. *See State v. Grisby*, 97 Wn.2d 493, 509, 647 P.2d 6 (1982) (observing that "[j]urors are presumed to follow instructions.").

In sum, we conclude the State's violation of CrR 4.7, although not excusable, and perhaps punishable by a lesser sanction than dismissal pursuant to CrR 4.7(h)(7),[5] did not cause Greiff's attorney to lose credibility with the jury. While it is true that Greiff's counsel said he would present certain testimony from Officer Marlow and then did not do so, this failure to deliver the promised testimony did not strike a substantial blow to his credibility nor did it hinder his rapport with the jury. We believe, as did the trial judge, that the discrepancy between the opening statement of Greiff's counsel and Marlow's testimony was clarified for the jury when Marlow explained that he had made a mistake at the earlier trial. We also believe that even if the credibility of Greiff's counsel was slightly impugned, the trial court alleviated any prejudice by admitting Marlow's previous testimony and instructing the jury to disregard

---

[5] CrR 4.7(h)(7) outlines the options available to a trial court in dealing with discovery violations. It states that:

(i) if at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule . . . the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

(ii) willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

One of the "other orders" available to the trial judge under CrR 4.7 includes ordering a mistrial. *See State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977) (recognizing mistrial as a sanction available under CrR 4.7(h)(7)(i)).

the unsupported statements of counsel. We conclude, therefore, that there is not a substantial likelihood that this irregularity had any bearing on the ultimate outcome at trial.

## 2. Ineffective Assistance of Counsel

■ Greiff also asserts that the trial court committed prejudicial error in denying his motion for a mistrial because the State's discovery violation resulted "in a denial of effective assistance of counsel[.]" Pet. for Review at 13-14. We first observe that Greiff did not present an ineffective assistance of counsel claim at the time he moved for a mistrial and, therefore, the trial court cannot be faulted for failing to consider the issue when it denied the motion for mistrial. Ineffectiveness of counsel is, however, an issue of constitutional magnitude, *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996), which can be raised for the first time on appeal. *See* RAP 2.5(a)(3).[6] Indeed Greiff argues, additionally, that he is entitled to a "new trial" because his counsel was rendered ineffective as a result of the State's discovery violation. Pet. for Review at 14.

The Sixth Amendment right of a criminal defendant to have a reasonably competent counsel is fundamental and helps assure the fairness of our adversary process. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). This fundamental right to effective counsel ensures that a defendant's conviction will not stand if it was brought about as a result of legal representation which fell below an objective standard of reasonableness. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 1034, 145 L. Ed. 2d 985 (2000). In other words, in assessing whether a defendant has a colorable ineffective assistance of counsel claim, we examine the advocacy of the defendant's attorney and determine if that advocacy was commensurate with

---

[6] RAP 2.5 states in pertinent part that: "(a) . . . The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right."

that of a reasonably prudent attorney. *See United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir. 1991) (noting that "defendant establish that counsel did not perform as well as a reasonably prudent lawyer").

In our judgment, the doctrine of ineffective assistance of counsel is inapplicable in the present context. We say that because Greiff's claim is not based on the incompetence of his attorney. In fact, he concedes that "[t]he ineffectiveness of . . . counsel, of course, was not due to the incompetence of counsel." Pet. for Review at 12.

■ His complaint here is essentially that the State's conduct in not disclosing the expected change in Officer Marlow's testimony precluded Greiff's counsel from providing reasonably competent representation. As noted above, though, the hallmark of a Sixth Amendment ineffective assistance of counsel claim is based on the substandard performance of the criminal defendant's attorney, not on the actions of third parties.

■ In his petition for review, Greiff cites three cases as support for his claim that "[p]romising to produce significant evidence in opening statement, and then failing to produce it, constitutes ineffective assistance of counsel." Pet. for Review at 9. None of these cases actually support the argument that the actions of a third party, viz, a prosecutor, can deprive a criminal defendant of the Sixth Amendment right to effective assistance of counsel. In the cases cited by Greiff, the legal assistance was ineffective because the attorney either (a) had promised to produce exonerating evidence and had it at his disposal yet inexplicably failed to produce it, *see Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), or (b) knew or should have known that the promised exonerating evidence would be inadmissible. *See People v. Lewis*, 240 Ill. App. 3d 463, 609 N.E.2d 673, 182 Ill. Dec. 139 (1992) (observing that trial counsel's promise to jury that he would introduce defendant's pretrial statement into evidence, even though such statement was inadmissible, constituted ineffectiveness of counsel); *People v. Ortiz*, 224 Ill. App. 3d 1065, 586 N.E.2d 1384, 167

Ill. Dec. 112 (1992) (holding that defense counsel's failure to present evidence in support of his assertion during opening statement about existence of another suspect, in part as a result of his failure to realize that matters covered in cross-examination and redirect examination were limited to scope of preceding examination, was ineffective assistance of counsel). As these cases illustrate, the ineffective representation occurred because of acts of omission or commission by the defendant's attorney, not by acts of opposing counsel or the trial judge.

■ Because Greiff does not claim his counsel acted in a manner that was objectively substandard, Greiff has not shown that he was prejudiced by ineffective assistance of counsel. He was not, therefore, entitled to a mistrial on this basis. Neither is he entitled to a new trial.

## B. Admission of Hearsay Testimony

■ Greiff contends, additionally, that we should reverse his conviction on the basis that the trial court "COMMITTED PREJUDICAL ERROR AND DEPRIVED MR. GREIFF OF HIS RIGHT TO CONFRONT WITNESSE[S] BY ALLOWING J.E. TO TESTIFY THAT SOMEONE TOLD HER THAT THE FORENSIC RAPE TEST PRODUCED NO RESULTS BECAUSE THE DOCTOR PERFORMED THE TEST INCORRECTLY." Pet. for Review at 14. More specifically, Greiff contends that the trial court erred in overruling his objection to the admission of J.E.'s statement because it was inadmissible hearsay. The State puts up very little argument against Greiff's assertion that this evidence should not have been admitted. The State's lack of argument is understandable since it is readily apparent that J.E.'s testimony about the forensic test results was hearsay and not admissible. See ER 801(c).[7] We reach that conclusion because her testimony was offered to prove the truth of the matter asserted, i.e., to explain why

---

[7] " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

there were no test results offered or admitted into evidence. Consequently, the trial court erred in admitting it.

The more pertinent question is whether the error in admitting this testimony justifies reversal of Greiff's conviction. Greiff suggests that the error is of constitutional magnitude because he had a constitutional right to confront the witnesses who offered testimony against him. That being the case, he argues, the error is "presumed to be prejudicial" and this court should reverse his conviction unless we are convinced beyond a reasonable doubt that the error was harmless. Pet. for Review at 14.

▇▇ We do not believe the error is of constitutional magnitude. We arrive at that conclusion because the Confrontation Clause applies only when the testimony at issue is offered *against* the defendant.[8] Testimony is "against" the defendant only if, in some manner, it implicates the defendant. *See Ohio v. Roberts*, 448 U.S. 56, 65, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (setting forth "a general approach" for determining when *incriminating statements* admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause); *State v. Hieb*, 107 Wn.2d 97, 105, 727 P.2d 239 (1986) (rejecting argument that admission of any hearsay violates constitutional rights to confront and cross-examine witnesses); *United States v. Webster*, 734 F.2d 1048, 1054 n.6 (5th Cir. 1984) (noting that one has no Confrontation Clause right "unless a codefendant's statement directly alludes to the complaining defendant"); *United States v. Porter*, 764 F.2d 1, 16 (1st Cir. 1985) (opining that statement did not trigger Confrontation Clause because it "made no mention of" accused); *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986) (noting no Sixth Amendment concerns because statement did not "directly implicate" accused); *Whelchel v. Wood*, 996 F. Supp. 1019, 1025 (E.D. Wash. 1997) (observing that underlying reason for the right of confrontation is to help ensure the accuracy of incriminating trial testimony).

---

[8] The pertinent portion of the United States Constitution reads "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI.

Here, the testimony provided by J.E. was not offered "against" Greiff because it did not implicate him in any wrongdoing. Greiff claims that J.E.'s "testimony that the tests were inconclusive, *because of the doctor's error*, suggested that the tests would have produced even more positive results if they had been done properly." Pet. for Review at 17 (emphasis in the original). We disagree. J.E. did not testify that the results were "inconclusive." Rather, she testified that there were "no results." See 2 VRP at 133. Testimony that test results were "inconclusive" would, arguably, be incriminating because it would at least suggest that the tests would help prove the rape occurred. On the other hand, saying there were no results does not help the State meet its burden to show that a rape occurred. At most, the innocuous statement merely disclosed that the alleged victim underwent a forensic examination. Because the statement at issue does not directly implicate Greiff in any illicit activity, his Sixth Amendment right to confront witnesses against him was not violated.

█ Since the admission of the hearsay statement in this case does not run afoul of the Confrontation Clause, the error is not of constitutional magnitude. The error, therefore, does not justify reversal of Greiff's conviction unless if, within reasonable probability, the statement materially affected the outcome. *See State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Here, we are satisfied that J.E.'s statement did not materially affect the outcome. As explained above, the statement at issue was essentially benign. It merely explained that there were no results, either negative or positive, due to the fact that the examining physician had performed the examination incorrectly. Because the statement did not implicate Greiff in any wrongdoing, it cannot be said its admission created a reasonable probability that it somehow effected the outcome at trial.

## C. Cumulative Error

Finally, Greiff argues that he is entitled to a new trial because "[a] series of errors, each of which is harmless, may have a cumulative effect that is prejudicial." Pet. for Review at 19. He asserts that "[a]ssuming, arguendo, that the effect of each of the previously discussed errors was harmless, their cumulative effect was not." Pet. for Review at 19.

We do not believe the cumulative error doctrine warrants reversal in this case. The application of that doctrine is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial. *See, e.g., State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984); *State v. Badda*, 63 Wn.2d 176, 183, 385 P.2d 859 (1963) (three instructional errors and the prosecutor's remarks during voir dire required reversal); *State v. Alexander*, 64 Wn. App. 147, 158, 822 P.2d 1250 (1992) (reversal required because (1) a witness impermissibly suggested the victim's story was consistent and truthful, (2) the prosecutor impermissibly elicited the defendant's identity from the victim's mother, and (3) the prosecutor repeatedly attempted to introduce inadmissible testimony during the trial and in closing); *State v. Whalon*, 1 Wn. App. 785, 804, 464 P.2d 730 (1970) (reversing conviction because (1) court's severe rebuke of the defendant's attorney in the presence of the jury, (2) court's refusal of the testimony of the defendant's wife, and (3) jury listening to tape recording of lineup in the absence of court and counsel).

Here, we are not dealing with the accumulation of several errors. Rather, we are confronted with two errors that had little or no effect on the outcome at trial. We are satisfied, therefore, that the cumulative effect of these insignificant errors did not deprive. Greiff of a fair trial.

## III. CONCLUSION

In sum, we are satisfied that the trial court did not abuse

its discretion in denying Greiff's motion for a mistrial or that Greiff is entitled to a new trial based on ineffective assistance of trial. We likewise believe that the admission of the hearsay statement did not affront the Sixth Amendment nor did it affect the outcome at trial. Finally, we are satisfied that the insignificance of the errors did not have a prejudicial cumulative effect. We therefore affirm Greiff's conviction.

Guy, C.J., and Talmadge, Ireland, and Bridge, JJ., concur.

Johnson, J. (dissenting) — The Rules of Criminal Procedure impose a continuing duty to disclose discoverable information. I agree with the majority that the prosecutor violated this duty when he failed to inform defense counsel prior to retrial that the investigating police officer was substantially changing his previous trial testimony. I disagree with the majority that, under the facts of this case, the trial court's decision to deny the motion for a mistrial was discretionary and no abuse occurred.

As a direct consequence of the prosecutor's failure to disclose this material change in testimony, defense counsel's opening statement to the jury seriously mischaracterized the police officer's expected testimony. At least part of defense counsel's strategy depended upon eliciting certain testimony from the police officer—defense counsel had good reason to expect. We can presume if defense counsel had known the officer planned to change his testimony, which under CrR 4.7(h)(2) the prosecutor had a clear duty to disclose, counsel would have undoubtedly given a different opening statement. As a direct consequence of the prosecutor's failure to disclose, at the least defense counsel's credibility with the jury suffered significantly. Despite recognizing the prosecutor's intentional violation of the rule, the majority fails to provide any meaningful remedy, effectively rendering the requirements of CrR 4.7(h)(2) meaningless. I would instead vacate the conviction and remand for a new trial.

In relevant part, CrR 4.7 states: "[T]he prosecuting attorney *shall* disclose . . . the substance of any . . . statements . . . ." CrR 4.7(a)(1)(i) (emphasis added). The requirement is mandatory and the prosecuting attorney's duty is continuing and, as the majority correctly recognizes, there is no question in this case that the prosecutor knowingly and intentionally violated this rule.

What the majority fails to recognize is the importance of the rule to the trial process. Based upon the information that is expected to be provided by the State, defense counsel prepares trial strategy, including developing an opening statement to the jury outlining the expected testimony and arguments. Misinformation can be devastating to this process. Defense counsel's misleading statements to the jury (again based upon the prosecutor's failure to supply correct information) caused loss of credibility and significantly undermined the effectiveness of defense counsel. The rule requires the disclosure of truthful information. The majority, by failing to provide a meaningful remedy, allows the State to effectively give misinformation—misinformation which leads directly and predictably to defense counsel looking foolish and untrustworthy to the jury.

Initially, I disagree with the standard of review adopted by the majority. Functionally, this discovery violation deprived the defendant of effective assistance of counsel—an error of constitutional magnitude. The standard of review, therefore, is not abuse of discretion, but whether the error was harmless beyond a reasonable doubt; a burden the State cannot meet in this case. *See State v. Caldwell*, 94 Wn.2d 614, 618, 618 P.2d 508 (1980) ("Since the error infringed upon the petitioner's constitutional rights, the error is presumed prejudicial, and the State has the burden of proving that the error was harmless.") (citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980)).

In situations, as here, where defense counsel's credibility has been undermined, vacating the conviction and granting a new trial is the appropriate remedy. While this is a case of first impression, cases dealing with analogous issues have

resulted in reversal. In *Bruno v. Rushen*, 721 F.2d 1193 (9th Cir. 1983), the court found the prosecutor's conduct (which resulted in undermining counsel's credibility before the jury) was a significant error meriting a grant of defendant's writ of habeas corpus. While *Bruno*, of course, did not involve CrR 4.7, there are many parallels to the instant case. In *Bruno*:

> [T]he prosecutor reviewed the testimony of an important witness for the defense that had repudiated earlier pro-prosecution statements she had given government investigators. He inferred that this sudden reversal at trial in her memory was the direct product of her consultation with the accused's attorney before she took the stand. He returned to this theme in the closing part of his argument. Thus, in hopes of destroying the credibility of her testimony on the stand, the prosecutor had labelled defense counsel's actions as unethical and perhaps even illegal without producing one shred of evidence to support his accusations.

*Bruno*, 721 F.2d at 1194 (footnote omitted). This attack on the attorney's credibility, coupled with hints from the prosecutor that hiring an attorney was probative of guilt, was found sufficient by the *Bruno* court to grant relief. *Bruno*, 721 F.2d at 1194-95. While *Bruno* was an extreme case, the principle applies equally here; we should not allow the prosecutor's violation of CrR 4.7(h)(2) to undermine the right to effective counsel.

Similarly, this court held early in our history that "[p]ersons accused of crime have the right to be represented by counsel whose usefulness shall not be impaired by any unfavorable remark or critical attitude on the part of the trial judge . . . ." *State v. Moneymaker*, 100 Wash. 463, 464, 171 P. 253 (1918). Moneymaker's conviction was vacated and a new trial ordered because the trial court rebuked defense counsel in front of the jury. Underlying *Moneymaker* is the principle that the accused should not be deprived of a credible defense counsel. The State's failure to effectively disclose lessened the credibility Greiff's counsel had with the jury and, thus, is functionally equivalent to

the judge's rebuke in *Moneymaker*.

The federal courts have also found reversible error when a prosecutor stressed to the jury that an attorney for the defendant was present during the execution of a search warrant. *United States v. McDonald*, 620 F.2d 559, 560 (5th Cir. 1980). The *McDonald* court reached this conclusion in part because the prosecutor implied that counsel had acted illegally or unethically by standing by while the accused secreted or destroyed evidence. *McDonald*, 620 F.2d at 561. The court found the implication "affected the fairness of McDonald's trial." *McDonald*, 620 F.2d at 564. The prosecutor's action lessened the credibility of counsel and, therefore, functioned to deprive the accused of the effective assistance of counsel. The court ruled that deprivation caused reversible error. *McDonald*, 620 F.2d at 564. I would likewise find the deprivation to Greiff caused reversible error here.

Regardless, however, of what standard of review applies and even without the constitutional dimension I would find present in this case, the prosecutor's duty to disclose this material change in testimony is required by CrR 4.7 which the majority rightfully recognizes. Compliance with the requirement of disclosure is critical to the trial process. A meaningful remedy for violation must exist. The discretionary standard propounded by the majority is an insufficient deterrent to future cases involving failure to disclose. Further, it minimizes the duty. I would instead hold when the State intentionally and deliberately violates its CrR 4.7 duties and when the testimony is material or significant to a fact of consequence, a new trial is required. Therefore, I would reverse the Court of Appeals and remand for a new trial.

SMITH, MADSEN, and SANDERS, JJ., concur with JOHNSON, J.