IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77072-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BLADIMIRO PEREZ, | |
| Appellant. | FILED: March 11, 2019 |

ANDRUS, J. — A jury found Bladimiro Perez guilty of assault in the fourth degree and interfering with domestic violence reporting. He challenges the trial court's denial of motions to dismiss the charges against him under CrR 4.7 and 8.3(b). We affirm.

## FACTS

On December 5, 2016, the State charged Perez with one count of assault in the fourth degree, domestic violence, in King County District Court, arising out of an alleged incident with his ex-wife, Sammy-Lee Thaxton, on December 3, 2016. David Bray was assigned to represent Perez in the district court proceeding. Bray served a discovery request on the State on December 8, 2016, asking for, among other things, "the substance of any and all oral statements" from witnesses the State intended to call at trial.

The deputy prosecuting attorney assigned to the case, Sam Lee, contacted Thaxton by phone on April 26, 2017.[1] In this call, Thaxton informed Lee that Perez had grabbed her neck, affecting her ability to breathe. Lee had no recollection of Thaxton using the word "choke" to describe Perez's actions. Lee did not disclose the content of this phone conversation to Perez or Bray.

On May 2, 2017, Lee notified Bray he intended to amend the information to add a second count of assault in the fourth degree and a new charge of interfering with domestic violence reporting. On May 3, 2017, the State provided Perez with a Bill of Particulars in which it alleged that on December 12, 2016,[2] Perez punched Thaxton in the face, and after she said she was calling the police, grabbed her by the neck and pinned her against the wall while trying to grab her phone. The State alleged Perez let go only after their 13-year-old son intervened. The Bill of Particulars did not indicate Perez had choked Thaxton or had affected her ability to breathe.

Bray sought clarification from Lee regarding the basis for the additional charges. On May 10, 2017, Lee informed Bray that one count of assault related to "the punch," and the second count of assault related to "the choke." This was the first time Bray had information of any alleged choking or strangulation.

On May 17, 2017, Bray interviewed Thaxton, with Lee present. Thaxton told Bray she had been choked and almost lost consciousness during the alleged

---

[1] Lee's declaration identified the date as March 26, 2017, but both Perez and the State acknowledge the date of first contact was actually a month later, April 26, 2017.

[2] The date of the incident was December 3, 2016. The reference to December 12, 2016, appears to be a typographical error.

assault. Lee informed Bray after the interview that he needed to discuss the case with his supervisor to determine if they should refile the charges in superior court. Bray was left with the impression that Lee had not heard about the alleged strangulation before that witness interview. Indeed, the May 17, 2017, interview was the first time Lee had received any in-detail description from Thaxton about the effects of Perez grabbing her neck.

On May 22, 2017, Lee made a plea offer to Perez and informed Bray that if Perez did not accept the State's plea deal, Lee would refile the case in superior court. Perez rejected the plea offer.

That same day, the State dismissed the district court case and charged Perez in King County Superior Court with one count of assault in the second degree by strangulation.[3] The certification of probable cause, dated May 18, 2017, alleged that on the afternoon of December 3, 2016, Perez punched Thaxton, grazing her chin or jaw, then grabbed her by the throat with his right hand, pushing or slamming her into a wall. It alleged Perez took Thaxton's cell phone to prevent her from calling the police, and while Perez held Thaxton by the neck, she began to "faint a little" from being strangled by Perez and began to lose consciousness. The State subsequently amended the information on June 14, 2017, to add one count of interfering with domestic violence reporting.

Scott Schmidt was appointed to represent Perez in superior court. On June 1, 2017, he served the State with a request for discovery, including a demand

---

[3] The State also charged Perez with one count of assault in the fourth degree against his teenage son. When the State amended the information, it dropped any charge relating to the son.

similar to Bray's for a summary of any oral statements made by trial witnesses. At the June 7, 2017 omnibus hearing, the State indicated it had provided all discovery to defense counsel as required by CrR 4.7(a). The State never provided Bray or Schmidt with a summary of Thaxton's oral statement to Lee during the April 26, 2017 phone call.

At trial, Thaxton testified she and Perez married in 1997, separated in 2006, and divorced in 2008. Thaxton and Perez have two children, one daughter and one son, who was 14 at the time of trial. Perez, who worked construction during the week, generally spent time with the children on weekends.

On the date of the incident, Saturday, December 3, 2016, Thaxton texted Perez to arrange for him to pick up their son for the weekend so she could attend a Christmas party in Gig Harbor. Thaxton left for work expecting Perez and their son to stop by her hair salon later that day to say goodbye before heading to Perez's home in Yakima, as they usually did. Her son, however, sent her a text that afternoon letting her know he and Perez intended to just hang out in her house. She texted Perez asking him if they planned to go to Yakima or stay in town. Generally, Perez stayed at a local motel if he stayed overnight, but he sent a text to Thaxton indicating he would stay at her house if acceptable to her. When she asked why, Perez indicated their son did not want to go to Yakima, and if she would not let him stay in her home, he intended to leave the son alone and drive back to Yakima.

Thaxton left work at 5 p.m. and returned home. When she arrived, Perez was still there. She saw groceries on the counter and a Mexican football game on

the television, leading her to suspect Perez planned to stay awhile. She asked Perez what was going on, and he responded, "Ask your son." Thaxton found their son asleep in her bedroom.

She woke her son and told him he needed to pack for the overnight stay with his father. The son was "grumpy" but went to his room to pack an overnight bag. Perez gathered his belongings and waited at the front door.

When the three were together in the living room, Thaxton told their son she would see him the next day and to have fun with his cousins. At that point, the son accused Thaxton of wanting to go to a Christmas party more than wanting to be home with him and used the "F-word." Thaxton, shocked at her son's swearing, put her hand on his shoulder and told him it was unacceptable to swear at her.

Thaxton then saw Perez's right fist coming at her face. She described it as "throw[ing] a right hook at [her] face." She ducked, and his fist "barely tapped" her jaw or "grazed [her] chin." She stepped back in shock, and their son asked Perez, "Why would you hit my mom?" Perez denied hitting her. Thaxton, who held her phone in her hand, told Perez she intended to call the police.

Thaxton testified that when she looked down to call 911, Perez took her by the throat with his right hand. She described it as "grabb[ing]" her throat. He pushed her back, and she struggled to stay on her feet. Thaxton testified she was trying to breathe and felt like she was going to faint. She stated she was having a hard time breathing "because he was constricting my airway." She testified she was not able to scream because of the constriction.

At that point, their son grabbed Perez by his left shoulder and pulled him off of Thaxton. She grabbed her phone from Perez, ordered him out of her house, and tried to catch her breath. She overheard Perez tell their son, in response to his question, "we have to stop her, she is going to call the cops." Thaxton dialed 911, and Perez walked out the front door.

The State asked Thaxton about a photograph of her neck. She testified that two hours later, a friend noticed bruising on her neck and recommended she photograph the bruise. This photograph showed redness on her neck where she testified Perez squeezed her.

Thaxton later took photos of the interior of her house and, at trial, walked through the photos with the jury, describing her interactions with Perez and their son. At one point, she stated the photos depicted tape marks on the floor that she placed "in the middle of April when I had first spoken with Mr. Lee." She testified that Lee requested she take a few pictures so he could get an idea of what happened where. She was not sure she could explain where she and Perez were standing and felt it would be easier to understand with photographs.

Thaxton testified she spoke with a police officer for about 20 minutes when they arrived. On cross-examination, Thaxton stated she told the officer about being choked. According to her, the officer looked at her neck and saw the red mark where she had been choked, and she demonstrated how Perez had choked her. But she admitted she did not tell the officer her breathing had been constricted. The officer wrote out an incident report based on her recitation of

events, which Thaxton signed. Thaxton admitted her written statement did not mention Perez choking her or squeezing her throat, or her feeling faint.

The following Monday, Thaxton went to an Issaquah court to obtain a protection order. A victim's advocate assisted her in completing the application. She did not recall telling the advocate that Perez had choked her. Her application also did not refer to being choked, having her throat squeezed, or having her breathing constricted. She did not mention feeling faint. Instead, she wrote that Perez grabbed her neck and slammed her against a wall so hard it knocked a candle off a shelf. To her, the words "grabbed me around the neck" meant he was choking her.

During cross, Perez's attorney asked Thaxton when she had provided photographs to the prosecutor. She testified that in April she had spoken with Lee on the telephone and sent him photographs via email. Thaxton initially stated she did not recall telling Lee that Perez choked her. When asked specifically when she mentioned being choked to police or the prosecutor for the first time, she testified she had "seen Mr. Lee prior to [the May 17, 2017 defense interview]." The pertinent exchange was as follows:

Q: So you talked to [Lee] about being choked prior to May 17?

A: He asked me what had happened, and I explained to him yes.

Q: Was that an in-person conversation, telephone, or by email?

A: Telephone.

After a short recess, Perez's attorney moved for the disclosure of any "Brady" material,[4] specifically as it might relate to any conversation Lee had with Thaxton during April. Lee informed the trial court "there has been no inconsistent statements made [in] my conversation with Ms. Thaxton and what she is representing." Lee stated the State had no exculpatory evidence to disclose.

King County Deputy Sheriff Timothy McDonald testified he was dispatched to Thaxton's house on December 3, arriving shortly after 5:30 p.m. When he spoke with Thaxton, she told him she had been "grabbed by the throat." He asked if she was in pain; she said she was and showed him her neck. McDonald testified that, per department protocol, once Thaxton reported being grabbed by the neck, he would have asked if she lost consciousness or if it affected her breathing. McDonald testified Thaxton denied losing consciousness or having her breathing affected. She did not tell him Perez squeezed her throat.

McDonald's report indicated, under a heading called "strangulation involved," that there was a red mark on her neck. But next to the word "strangulation," McDonald noted "no." McDonald indicated that by checking a box that says "red marks," it means he saw red marks, even though he had no independent recollection of it. He saw no bruising, or any other signs of strangulation, such as petechiae, and noted Thaxton reported no difficulty swallowing or ringing in her ears.

After the close of evidence, Perez moved to dismiss the charges against him based on the State's "late provision of discovery related to the testimony that

---

[4] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Ms. Thaxton gave that she had a conversation with Mr. Lee in April." Perez argued it was both a discovery violation and a basis for dismissal under CrR 8.3(b). He contended that in his opening statement to the jury, he indicated there would be no evidence presented at trial showing Thaxton had alleged being choked between the date of the incident on December 3, 2016 and her May 17, 2017 interview by defense counsel. Perez contended the disclosure by Thaxton that she had reported being choked to Lee in April 2017 undermined Perez's theory of the case and counsel's credibility in the eyes of the jury.

During argument on the motion, the court reviewed a recording of Thaxton's testimony and did not hear any testimony that Thaxton disclosed the choking to Lee in the April call. Defense counsel challenged this summary of her testimony, leading the court and counsel to review a portion of Thaxton's testimony together. Defense counsel asked for additional time to review more of her cross examination testimony. The trial court denied this request and denied the motion to dismiss, finding no evidence Thaxton discussed having been choked by Perez with Lee in April. The trial court also denied an oral motion for mistrial.

The following morning, the trial court indicated to counsel it wanted to revisit its ruling on the defense motion to dismiss. The court stated:

> I did go back and listen to the record again in its entirety last night and again this morning, and Mr. Schmidt was correct. When we got to the far end of Ms. Thaxton's [testimony,] she did – he did ask at – I think it said 10:38 – what other contacts she had had with individuals about eventually being choked, he asked did you talk to the prosecutor about being choked? She said that she had – he had asked her what had happened and she explained what happened right after she sent the photographs to him. He said did you talk to him about being choked prior to May 17, 2017? She said, he asked

- 9 -

me what happened and I explained that she didn't say choked, but she explained what happened.

But based on the entirety of Thaxton's testimony, the court concluded there was an insufficient showing of prejudice to support a motion to dismiss.

The jury acquitted Perez of assault in the second degree (the strangulation charge) and found him guilty of the lesser included charge of assault in the fourth degree. It also found him guilty of interfering with domestic violence reporting. Additionally, the jury found Perez and Thaxton were members of the same family or household.

Perez was sentenced to 364 days in jail, with all but 30 days suspended, to be served on work release, and 12 months of probation supervised by the Department of Corrections.

ANALYSIS

Perez asks this court to reverse his convictions based on a discovery violation under CrR 4.7 and government mismanagement under CrR 8.3(b). We will not disturb a trial court's discovery decision in a criminal case absent a manifest abuse of discretion. State v. Blackwell, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). Similarly, we review a trial court's denial of a motion to dismiss for governmental mismanagement under the same abuse of discretion standard. State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).

CrR 4.7(a)(1)(i) requires the prosecution to disclose the names of any persons the prosecutor intends to call as witnesses at trial, "together with . . . the substance of any oral statements of such witnesses." The purpose of this rule is to prevent a defendant from being prejudiced by surprise, misconduct, or arbitrary

action by the government. State v. Cannon, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996). Under CrR 4.7(h)(7)(i), if a trial court learns of a discovery violation, it may order disclosure of information not previously disclosed, grant a continuance, dismiss the action, or enter an order "as it deems just under the circumstances."

Under CrR 8.3(b), the trial court may dismiss any criminal prosecution "due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Two things must be shown before a court can dismiss charges under this rule. First, there must be arbitrary action or governmental misconduct. State v. Michielli, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). Second, a defendant must show prejudice affecting his right to a fair trial. Id. at 240.

Dismissal as a sanction for a discovery violation or for government mismanagement is an extraordinary remedy. Cannon, 130 Wn.2d at 328; Blackwell, 120 Wn.2d at 830-31. To justify dismissal, a defendant must show actual prejudice from a discovery violation or governmental mismanagement. State v. Krenik, 156 Wn. App. 314, 320, 231 P.3d 252 (2010). The mere possibility of prejudice is insufficient. Id. The level of misconduct needed to prove a violation of due process "must shock the conscience of the court and the universal sense of fairness." State v. Martinez, 121 Wn. App. 21, 35, 86 P.3d 1210 (2004).

We, like the trial court, conclude there was an insufficient showing of actual prejudice to warrant reversing Perez's convictions. First, Perez was acquitted of committing assault by strangulation. The jury was instructed that a person commits the crime of assault in the second degree when he assaults another by

- 11 -

strangulation. "Strangulation" was defined as "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or to compress a person's neck with the intent to obstruct the person's blood flow or ability to breathe." The jury obviously concluded the State had not proven Perez compressed Thaxton's neck such that it affected her ability to breathe, despite Thaxton's testimony to the contrary. Thus, the State's failure to disclose to defense counsel that Thaxton told Lee on April 26, 2017, that Perez choked her or grabbed her neck in such a way as to affect her breathing did not lead to a conviction on this felony charge.

Second, the possibility that counsel's credibility was damaged by his misstating the date on which Thaxton first reported being choked is not sufficient prejudice to warrant a dismissal. A similar argument was rejected in State v. Greiff, 141 Wn.2d 910, 921, 10 P.3d 390 (2000). In that case, a key law enforcement officer testified at the defendant's first trial that when he asked the victim if she had been sexually assaulted, she told him she had not. Id. at 916. The court declared a mistrial when the jury could not reach a unanimous verdict. Id. In the second trial, defense counsel, relying on the officer's earlier testimony, stated in his opening that the police officer would testify he asked the victim if she had been assaulted and she told him she had not. Id. When the police officer took the stand in the second trial, he testified that he never asked the victim if she had been sexually assaulted. Id. at 917.

Greiff argued the failure to notify him of this change in testimony caused actual prejudice because the testimony "sabotaged" his opening statement and

"undoubtedly damaged" his attorney's credibility in the eyes of the jury. Id. at 918, 921. But the Supreme Court stated "'the trial judge is best suited to judge the prejudice of a statement.'" Id. (quoting State v. Weber, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983)). It concluded the record supported the trial judge's conclusion that the inconsistency between the opening statement and the officer's testimony was not significantly prejudicial to the credibility of Greiff's counsel. Id. at 922.

Greiff is analogous. The trial court reviewed Thaxton's testimony, heard from Lee regarding the content of any conversations he had with Thaxton, and considered defense counsel's opening statement. It concluded the failure to disclose the oral statements by Thaxton before trial did not prejudice Perez's right to a fair trial. The record supports this finding. Perez's main theory was Thaxton fabricated the choking allegation, circumstantially established by the fact she did not raise this allegation for months after the December 3 incident. As the trial court noted, the theory remained valid even after learning she divulged to prosecutors she had been choked 21 days earlier than defense counsel previously knew. Perez was still able to argue the delay in her reporting undermined her credibility.

Third, State v. Martinez, the case on which Perez relies, is not analogous to his case. In Martinez, the trial court dismissed charges under CrR 8.3(b) after the State revealed exculpatory evidence in the course of the trial. 121 Wn. App. at 24. Martinez was charged with armed robbery after two co-defendants informed police he was the "mastermind" of the robbery scheme. Id. at 24-25. The co-defendants were found with guns, and they claimed Martinez had furnished the weapons for their use in the robbery. Id. at 24. But almost immediately, police

discovered one of the guns had been reported stolen by a third party five months earlier. Id. at 25. Yet, a co-worker of Martinez told police that Martinez had shown her that gun almost a year before it had been reported stolen, evidence the State knew to be exculpatory. Id. at 25-26. In the State's opening, the prosecutor told the jury that the co-worker would testify Martinez showed her the gun found in the possession of the two co-defendants. Id. at 26.

During trial, the prosecutor informed defense counsel he did not intend to question the co-worker about her identification of the gun. Id. at 26-27. Just before the State rested, the prosecutor informed defense counsel that the gun had been reported stolen after the date on which the co-worker claimed Martinez had showed it to her. Id. at 27. Even after revealing this evidence, the prosecutor still sought to connect the gun to Martinez. Id. at 28. Defense counsel had no record of ever receiving the robbery report relating to the gun allegedly connected to Martinez. Id. at 25, 30. And the State had no record of ever notifying Martinez or his attorney of the discrepancy between the date on which the co-worker claimed Martinez showed her the gun and the date on which it was reported stolen by its owner. Id. at 30-31.

The court of appeals upheld the trial court's finding that failing to disclose this crucial exculpatory evidence constituted governmental mismanagement. Id. at 33. It also upheld the trial court's finding that the withheld evidence prejudiced Martinez's right to a fair trial such that only a dismissal of the charge could remedy the due process violation. Id. at 34.

- 14 -

Here, the evidence the State failed to disclose to Perez was not exculpatory or so material to his guilt or innocence as to taint the fairness of his trial. Lee notified Bray of a "choke" by email on May 10, 2017. The substance of Thaxton's allegations had been disclosed to defense counsel in the May 17, 2017 defense interview, and in the information and probable cause certification filed in superior court on May 22, 2017. We certainly do not condone the prosecutor's failure to summarize the content of his conversation with Thaxton. But we conclude the failure to notify Perez of this conversation does not constitute reversible error.

Affirmed.

Andrus, J.

WE CONCUR:

Mann, A.C.J.