314

[No. 64913-2-I.   Division One.   May 24, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINE DIANE KRENIK, *Appellant*.

*Eugene E. Piculell* (of *Law Office of Gene E. Piculell*), for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1 BECKER, J. — Appellant Christine Krenik, convicted on drug charges, contends she is entitled to dismissal on the basis of government misconduct because the prosecutor failed to disclose his knowledge that a federal agency was conducting camera surveillance of her residence. Because Krenik did not ask for a continuance to explore this new information when it was revealed at trial, she has not shown actual prejudice to her right to prepare her defense. Accordingly, we affirm her conviction.

¶2 Krenik was under investigation by the Thurston County Narcotics Task Force. Detective Brian Russell, a deputy assigned to the task force, arranged for an informant to go to Krenik's home and buy methamphetamine from her. The informant was wearing a body wire that transmitted and recorded the transaction. The State charged Krenik with two counts of unlawful delivery of methamphetamine and one count of unlawful manufacture of marijuana.

¶3 At trial, Detective Russell was the State's first witness. On direct examination, he described the arrangements he made to monitor the informant's visit to Krenik's residence in a rural residential area of Olympia. The prosecutor asked if it was difficult to set up actual surveillance in that location, and the detective answered that it was.

Q. Sometimes, do you have officers that are equipped with cameras to record the events?

A. Yes.

Q. Was that possible in this situation?

A. Yes, it was.

¶4 Upon hearing that answer, the prosecutor asked for a sidebar. At the next break, the trial court placed the sidebar discussion on the record. The prosecutor explained that when he asked Detective Russell whether camera surveillance was possible, he had not expected him to answer "yes." He said Detective Russell, apparently confused about what he was being asked, was referring to some kind of video surveillance conducted by the DEA (Drug Enforcement Administration), a federal agency. The prosecutor said he did not know the state of the DEA operation, but it was "something that gives them the opportunity to watch something live. . . . I just know something existed, so I just brought that to the court's attention."

¶5 Krenik objected that the State's failure to disclose the existence of DEA surveillance as part of discovery was a violation of CrR 4.7. The prosecutor responded that it was his "understanding, in speaking with the detective today, that the DEA was doing their own investigation, independent of what Thurston County was doing, and they had a camera in a hidden location. I don't know what it did."

¶6 The court allowed the defense to question Detective Russell about the hidden DEA camera. Detective Russell recalled telling the prosecutor about the DEA imaging device "probably" within a week or two before trial. He admitted that there was no mention in his police report of any imaging device installed by the DEA. Krenik moved for a mistrial based upon the prosecutor's undisclosed knowledge of the DEA imaging device. The trial court denied the motion.

¶7 The next day, the trial court returned to the subject. "I'm not sure this court has a clear understanding on the issue of nondisclosure of the existence of some sort of

recording from the DEA . . . both in terms of what happened and from the prosecutor's perspective whether that is excusable and fine and no sanctions should result. And from the defendant counsel's perspective, I think the assertion yesterday was for a motion for mistrial." The prosecutor responded as follows: "The record that I think exists, based on testimony, was that the DEA had some camera. We don't have any access to it. There's no tape that exists, as far as we know. So there's nothing to turn over." Krenik did not comment.

¶8 Krenik was found guilty. On appeal, she maintains that the prosecutor violated CrR 4.7 by failing to make a pretrial disclosure of his knowledge of the DEA surveillance. The State responds that there is no violation of the criminal rules of discovery where the State is not in possession of a piece of evidence and does not know if it exists.

■ ¶9 The rule limits the prosecutor's discovery obligation to "material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." CrR 4.7(a)(4). It thus covers knowledge as well as tangible evidence. Here, Detective Russell's testimony indicates that the prosecutor did have knowledge a week or two before trial that there was federal surveillance of the premises where Krenik lived, including the use of some kind of imaging equipment.

¶10 Alternatively, the State claims that the prosecutor did not have any obligation to disclose his knowledge of the federal surveillance of Krenik's property because the information was not material. We have said that while prosecutors may not suppress material evidence, "neither are they under a duty to disclose on their own initiative all they know of the case and their witnesses." *State v. Ervin*, 22 Wn. App. 898, 904, 594 P.2d 934, *review denied*, 92 Wn.2d 1017 (1979). Relying on this statement, the State seems to view the rule as allowing the State to withhold information that in the State's judgment is not material. This cramped interpretation of the rule is incorrect.

¶11 The criminal discovery provisions are based on the principle that pretrial discovery should be as full and free as possible:

> "In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protections of persons, effective law enforcement, the adversary system, and national security."

*State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988), (quoting CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE 77 (West Pub'g Co. ed. 1971)). "CrR 4.7 is a reciprocal discovery rule, with the prosecutor's and defendant's obligations being separately listed, and with other subsections of the rule encompassing additional and discretionary disclosures and matters not subject to disclosure also being carefully set out." *Yates*, 111 Wn.2d at 797. If a defendant requests the disclosure of information beyond that which the prosecutor is specifically obligated to disclose under the discovery rules, the court in its discretion may require disclosure if the information sought is material and the request is reasonable. CrR 4.7(e); *State v. Norby*, 122 Wn.2d 258, 266, 858 P.2d 210 (1993).

¶12 Among the numerous items the prosecutor has a mandatory obligation to disclose is "electronic surveillance" of the defendant's premises:

> The prosecuting attorney shall disclose to the defendant:
>
> (i) any electronic surveillance, including wiretapping, of the defendant's premises or conversations to which the defendant was a party and any record thereof.

CrR 4.7(a)(2). The prosecutor's awareness that a federal agency was conducting video surveillance of Krenik's residence is within the scope of this provision. The existence of the video surveillance should have been disclosed without the defense having to request it and whether or not the prosecutor thought it was material information.

■ ¶13 The State has a continuing duty to promptly disclose discoverable information. CrR 4.7(h)(2); *State v. Greiff*, 141 Wn.2d 910, 919, 10 P.3d 390 (2000); *State v. Brush*, 32 Wn. App. 445, 455, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983). As soon as information about video surveillance of Krenik's residence was within the knowledge of the prosecutor, it should have been promptly disclosed under CrR 4.7.

¶14 Krenik asserts that the prosecutor's failure to disclose the federal surveillance was misconduct so egregious as to compel a declaration of mistrial as a sanction. Possible sanctions for discovery violations include discovery of undisclosed information, a continuance, dismissal, or other action the court deems necessary. CrR 4.7(h)(7). In addition, under CrR 8.3(b), the trial court may dismiss a criminal prosecution for governmental misconduct "when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

■ ¶15 The trial court's power to dismiss under CrR 4.7 or CrR 8.3 is discretionary, and the decision is reviewable only for manifest abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993); *State v. Smith*, 67 Wn. App. 847, 851, 841 P.2d 65 (1992), *review denied*, 121 Wn.2d 1019 (1993). Dismissal is an extraordinary remedy, one that the trial court should use only as a last resort. *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003); *Smith*, 67 Wn. App. at 852. Dismissal under CrR 8.3 or CrR 4.7 is "generally available only when the defendant has been prejudiced by the prosecutor's actions." *State v. Cannon*, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996). To justify dismissal, the defendant must show actual prejudice; the mere possibility of prejudice is insufficient. *State v. Stein*, 140 Wn. App. 43, 56, 165 P.3d 16 (2007), *review denied*, 163 Wn.2d 1045 (2008).

¶16 Krenik claims that nondisclosure of the surveillance denied her the opportunity to adequately prepare for trial. The State contends that Krenik did not show actual preju-

dice and the appropriate remedy would have been a recess or continuance, not dismissal.

¶17 Without knowledge of what any surveillance tapes may have contained, Krenik speculates that disclosure might have revealed witnesses of benefit to her defense. While this merely establishes the possibility of prejudice, actual prejudice can be shown if the State's belated interjection of new facts into a case forces the defendant to choose between the right to a speedy trial and the right to prepare an adequate defense. *See State v. Sherman*, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990); *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997); *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). But Krenik made no showing before the trial court and does not argue on appeal that her time for trial period under CrR 3.3 would have expired had the trial court granted a request for a continuance.

¶18 Where previously undisclosed discovery is revealed during the State's case-in-chief, a continuance can be an appropriate remedy. *Brush*, 32 Wn. App. at 456. In *Brush*, the defendant moved for a mistrial because the prosecutor failed to provide defense counsel with the statement of a witness until the first day of trial. *Brush*, 32 Wn. App. at 455-56. "Because the available remedy was the granting of a continuance and since defense counsel did not move for such a continuance, the prosecutor's noncompliance with the discovery rule was not prejudicial error." *Brush*, 32 Wn. App. at 456.

¶19 Here, the DEA surveillance came to light during the first day of trial. The trial court asked Krenik what remedy she sought. Krenik could have moved for a continuance to obtain access to the recording, if any existed, but the only remedy she requested was the granting of a mistrial. She did not change that position when the court offered an opportunity to revisit the issue the next day. Following *Brush*, we conclude Krenik did not establish actual prejudice sufficient to compel the choice of dismissal as a sanc-

tion for the prosecutor's noncompliance with the discovery rule.

¶20 Affirmed.

LEACH, A.C.J., and COX, J., concur.