FILED
COURT OF APPEALS
DIVISION II

2015 APR 21 AM 9: 03

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>   v.<br><br>JEFFREY D. ROBINSON<br><br>                Appellant. | No. 45496-3-II<br><br>UNPUBLISHED OPINION |

BJORGEN, A.C.J. — After the trial court concluded that the State had committed a CrR 4.7 discovery violation by failing to disclose certain evidence to the defense before trial, Jeffrey Robinson requested the dismissal of his charges as a remedy. The trial court declined Robinson's request to dismiss his charges and instead allowed Robinson to choose as a remedy either suppression of the undisclosed evidence or a mistrial; Robinson chose a mistrial. At the conclusion of his second trial, the jury returned verdicts finding Robinson guilty of possession of a stolen vehicle. Robinson appeals his conviction, asserting that the trial court abused its discretion by failing to dismiss his charges. We affirm.

No. 45496-3-II

FACTS

On May 7, 2013, the State charged Robinson with one count of possession of a stolen vehicle. The State later amended its charges to add one count of theft of a motor vehicle. Robinson's first trial commenced on August 20, 2013.

During its opening statement at the first trial, the State told the jury that Washington State Patrol Trooper James O'Connor would testify regarding the significance of a tan[1] truck that was present near where he had pulled over Robinson in a blue truck that was later reported as stolen. After the first trial witness concluded her testimony, Robinson's defense counsel told the trial court that the State had committed a discovery violation by failing to disclose Trooper O'Connor's claim that the tan truck was involved in the theft of the blue truck that Robinson allegedly stole and possessed. Defense counsel stated that she had specifically asked Trooper O'Connor about the significance of the tan truck during a pretrial interview, but that he "pretty much just shrugged it off" and told her that he had "just cleared the stop" of the tan truck. Report of Proceedings (RP) (Aug. 20, 2013) at 53.

Defense counsel moved to dismiss Robinson's charges based on the alleged discovery violation. After hearing testimony from Trooper O'Connor and extensive arguments from counsel, as well as reviewing a transcript of defense counsel's interview with Trooper O'Connor, the trial court found that the State had violated the rules of discovery by failing to disclose evidence to the defense. Because of this violation, Robinson filed a motion to dismiss his

---

[1] The tan truck is the same as the "second vehicle" or "second truck" referred to in the record excerpts below.

charges, which the trial court denied, noting that dismissal was too harsh a penalty for the State's discovery violation. Instead, the trial court allowed Robinson to choose between a mistrial or suppression of the previously undisclosed evidence as a remedy for the State's discovery violation. Robinson chose a mistrial. The trial court ordered a mistrial and later entered the following findings of fact, which findings are not challenged in this appeal:

A. February 25, 2013 Incident

1. On February 25, 2013 Trooper O'Connor pulled over a blue Toyota pick up truck for failure to signal as it entered the highway from the off ramp. Later that day the vehicle was reported as stolen. Trooper O'Connor spoke with Officer Sabado and informed him about the contact. Officer Sabado's report indicated that Trooper O'Connor mentioned another vehicle appeared to be waiting in the area. The license number of that vehicle was provided. Trooper O'Connor's report did not mention the second vehicle.

B. June 17, 2013 Interview

2. On June 17, 2013 defense counsel interviewed Trooper O'Connor concerning the events of February 25, 2013. Deputy Prosecutor Robert Davy was present for that interview. Defense counsel asked Trooper O'Connor to tell her about what he remembered about February 25th just prior to 1:00. Trooper O'Connor stated: "I was traveling southbound on State Route 3, just north of Finn Hill. It's approximately milepost 52 traveling south. Under Finn Hill there, I observed a small pickup truck using the on-ramp from Finn Hill to South 3. I observed the pickup not use its left turn signal to merge onto the highway. At that point, when I observed the vehicle not use its turn signal, I stopped the vehicle and made my contact with the driver.["] The trooper then discussed the contact with the driver of that pickup truck.

3. After describing the contact, Trooper O'Connor then stated: "I cleared the stop. Jeffrey—the driver of the Toyota exited back on the highway and [I] continued to patrol that night.["]

4. Defense counsel asked the Trooper if he had contact with someone else about that time and the trooper stated that he had contact with a vehicle he categorized as a disabled vehicle just after his contact with the blue pickup truck. No other information was provided.

5. Because a second vehicle had been mentioned in Sabado's report, defense counsel attempted to follow up on that and was not able to find the driver, but was

interested in that second vehicle because there could have been some exculpatory information that could have been provided.

6. Based on the interview with Trooper O'Connor, defense counsel did not follow up further believing that information was a dead end and not relevant to the incident.

7. After the interview with defense counsel, Trooper O'Connor had further conversation with DPA Davy that was not in the presence of defense counsel. DPA Davy fleshed out more information concerning the second vehicle. DPA Davy was aware that defense counsel did not have this information as it was not disclosed in any police report and he was present for the interview with defense counsel just moments before. DPA Davy knew that defense counsel did not have the additional information, however, DPA Davy did not disclose that information to defense counsel.

C. Opening Statement August 20, 2013

8. Mr. Davy stated in his opening statement: "There was a second truck present just behind the truck that Mr. Robinson was driving. Trooper O'Connor is going to tell you that he thought it was odd at the time, being hardly any traffic, if at all, at one o'clock in the morning on a Sunday night in Poulsbo, or just south of Poulsbo on the highway, and that the second truck did a slow roll-by—didn't get over in another lane, even though that lane was open—did a very, very, slow roll-by of the officer who had stopped this vehicle. Estimates 10, 15, 20 miles an hour on a 60-mile-an-hour highway. Trooper O'Connor will tell you the second truck continued on, approximately, a quarter mile, half a mile just down the road, but that it's a straight road and it's a clear road, and that he can see that that second truck pulls over and turns on its flashers while Trooper O'Connor was conducting a traffic stop with this first truck, the defendant's truck. He initially saw this second truck pull by him at a slow rate of speed, but it stopped up there and put on its flashers. He's completed the first stop. Nothing amiss that he can tell at this point, other than giving the defendant a verbal warning for not having his license on him and for a lane violation that he witnessed. Trooper O'Connor pulls up behind the second truck. And he will tell you, the flashers were on; that truck didn't move that entire time; it was in his sight that entire time that he dealt with the first truck. And Trooper O'Connor will tell you that he went up to that second truck and offered his assistance. . . He approached the vehicle and he noticed that the driver was sitting there and the cell phone—and there was a cell phone on the bench seat next to the driver.

4

9. In describing count II, theft of a motor vehicle, Mr. Davy says: "The trooper will tell you that he is sure that it's the right guy. But what's additional with Count II is the State will bring evidence that shows you, circumstantially, that the defendant took the vehicle from that lot, which is why he was in such close proximity to the victims' home at the time that he did, what was in the car, what the other truck was doing, and why all of that together will show you beyond a reasonable doubt that the defendant also stole that truck from the Stevensons.

### D. Voir Dire of Trooper O'Connor August 21, 2013

10. Trooper O'Connor testified that immediately after the interview with defense counsel in June, that he and Mr. Davy had a conversation wherein more information was fleshed out concerning the tan pickup truck, such that the tan pickup truck was entering onto Highway 3 with the other vehicle; that the trooper, in stopping the blue Toyota, had to get between the two vehicles to effect the stop; that he saw the second vehicle traveling very slowly past the first vehicle, such that his opinion is that they were traveling together.

11. There was nothing in defense counsel's interview or in Officer Sabado's report that reveals that Trooper O'Connor saw these two cars traveling together off the on-ramp, that he had to get between them to effect the stop of the Toyota, that the driver of the brown car drove slowly past the trooper, which was unusual, or that the trooper felt or opined that the two were connected in any way, shape, or form.

12. In defense counsel's interview with Trooper O'Connor, hearing nothing about the second vehicle when he described his initial contact with the Toyota, asked Trooper O'Connor if he had contact with anyone else. Trooper O'Connor's response was entirely consistent with the information previously disclosed by prosecutors to the defense. No information was ever disclosed prior to trial that would lead defense counsel to believe that the two vehicles were traveling together or that there was a suspicion that they were connected to each other. Defense counsel would not and could not have known that information in her follow up with the trooper in his interview.

13. The state intended to elicit from Trooper O'Connor his opinion concerning the second vehicle and the signs that the two were travelling together and that in his opinion the second vehicle acted as a disable[d] vehicle in order for the first vehicle to get away clean. The state did not disclose that he intended to elicit this opinion from Trooper O'Connor.

Clerk's Papers (CP) at 159-62.

5

Based on the above, the trial court concluded that the State had violated CrR 4.7(h)(2) by failing to disclose evidence to defense counsel, that dismissal of Robinson's charges was too harsh a sanction for the State's violation, and that mistrial was the proper remedy.

After the trial court declared a mistrial, the parties discussed a possible date for the next trial. The State suggested starting the new trial the following week. Defense counsel told the trial court that Robinson had a neurology appointment the following Monday, August 26, and that she wanted additional time to conduct some investigation. When the trial court suggested an early September trial date, defense counsel stated that she would prefer a trial date at the end of September because she had an ill family member in Illinois whom she wanted to visit in early September. The trial court set a new trial date of September 30, noting that the CrR 3.3 time for trial period had started over when the court declared a mistrial.

Robinson's second trial began on September 30. At the start of trial, the State moved to dismiss Robinson's theft of a motor vehicle charge, which motion the trial court granted.[2] At the conclusion of Robinson's second trial, the jury entered a verdict finding him guilty of possession of a stolen vehicle. Robinson appeals his conviction.

---

[2] Although Trooper O'Connor testified briefly about the tan truck at Robinson's second trial, his testimony did not suggest that the presence of the tan truck was relevant to Robinson's possession of a stolen vehicle charge.

ANALYSIS

Robinson contends that the trial court abused its discretion by failing to dismiss his charges as a remedy for the State's discovery violation.[3] At the outset of our analysis, we note that the trial court's conclusion that the State had violated CrR 4.7(h)(2) by failing to disclose evidence to the defense is not at issue in this appeal. Rather, the only issue before us is whether the trial court abused its discretion when it denied Robinson's motion to dismiss his charges as a remedy for the State's discovery violation, instead allowing him to choose between suppression of the evidence or a mistrial.

CrR 4.7(h)(2) imposes on the State a continuing duty to disclose certain evidence to the defense, stating:

> Continuing Duty to Disclose. If, after compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, the party shall promptly notify the other party or their counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

CrR 4.7(h)(7) provides a trial court discretion to sanction a party that fails to comply with the discovery rules, stating in relevant part:

> Sanctions.
> (i) [I]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

---

[3] Robinson cites to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 215 (1963) in his assignment of error, but does not argue that the State's discovery violation rose to the level of a *Brady* violation. Accordingly, we do not address the constitutional issues presented in *Brady*. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990).

One of the other orders available to the trial judge under CrR 4.7 is an order of mistrial. *State v. Greiff*, 141 Wn.2d 910, 923 n.5, 10 P.3d 390 (2000) (citing *State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977)). Generally, trial courts have "broad discretion to choose the appropriate sanction for violations of the discovery rules." *State v. Oughton*, 26 Wn. App. 74, 79, 612 P.2d 812 (1980) (citing CrR 4.7(h)(7)). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). However, the dismissal of charges for a State's discovery violation is an "extraordinary remedy" that the trial court should only order "as a last resort." *State v. Krenik*, 156 Wn. App. 314, 320, 231 P.3d 252 (2010); *see also State v. Cannon*, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996) ("Dismissal of a case for discovery abuse is an extraordinary remedy that is generally available only when the defendant has been prejudiced by the prosecution's actions.").

Here, the trial court considered dismissal as a possible remedy for the State's discovery violation, but concluded that dismissal was too harsh a sanction under the circumstances. Robinson appears to argue that the trial court's reason for denying dismissal was untenable because, by declaring a mistrial, Robinson was forced to proceed to a new trial that was commenced beyond the original expiration of his timely trial period. We disagree.

CrR 3.3(c)(2) provides in relevant part:

> Resetting of Commencement Date. On occurrence of one of the following events, a new commencement date shall be established, and the elapsed time shall be reset to zero. If more than one of these events occurs, the commencement date shall be the latest of the dates specified in this subsection.
> . . . .
> (iii) New Trial. The entry of an order granting a mistrial or new trial. . . . The new commencement date shall be the date the order is entered.

8

Robinson does not contend that his CrR 3.3 timely trial right was actually violated by the trial court's order declaring a mistrial, but instead appears to argue that the trial court's decision to declare a mistrial rather than dismiss his charges was an abuse of discretion because it forced him to accept a new commencement date that extended his timely trial period. Accepting Robinson's argument, however, would transform every trial court decision imposing a mistrial as a remedy for the State's discovery violation into an abuse of discretion. Such a result conflicts with the broad discretion afforded to a trial court under CrR 4.7 to impose sanctions "as it deems just under the circumstances," as well as with our Supreme Court's approval of mistrial as a proper remedy for the State's discovery violation. *Greiff*, 141 Wn.2d at 923 n.5. We thus hold that Robinson has failed to show the trial court abused its discretion by refusing to dismiss his charges as a remedy for the State's discovery violation.

Moreover, the record belies Robinson's contention that the trial court's declaration of a mistrial forced him to proceed to a trial that commenced beyond the original expiration of his timely trial period. The record shows that Robinson's original timely trial period was set to expire on September 18. After the trial court declared a mistrial on August 21, the State requested a new trial date "as soon as possible," stating, "Next week would be fine." RP (Aug. 8, 21, 2013) at 156. The trial court proposed two potential trial dates, which dates were both within Robinson's original timely trial period. Defense counsel, however, requested a trial date at the end of September due to a family member's illness. Accordingly, even were we to hold that a trial court could abuse its discretion by ordering a mistrial as a sanction for the State's discovery violation where such a sanction forces a defendant to proceed to a trial beyond his or

No. 45496-3-II

her original timely trial period, those facts are not present here. Accordingly, we affirm Robinson's conviction of possession of a stolen vehicle.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

We concur:

Worswick, J.

Sutton, J.

10