# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52456-2-II |
| Respondent, | |
| v. | |
| DAKOTA AUSTIN ABSHER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Dakota Austin Absher was driving when his car spun off the roadway rolling over at least once. One of his passengers suffered a head wound. Absher was charged with vehicular assault while driving under the influence of alcohol.

Absher moved to dismiss the charge because the State provided him with the Washington State Patrol Crime Laboratory's report establishing his blood alcohol level on the night of the accident, as well as other discovery, only a few days before trial. The trial court found government misconduct and suppressed much of the State's evidence, but the trial court did not exclude the crime lab report, and it denied the motion to dismiss for lack of prejudice.

Absher appeals, arguing that the trial court erred when it denied his motion to dismiss. Absher also argues that the trial court erred when it imposed the $200 criminal filing fee at sentencing. The State concedes that the filing fee should be stricken.

We hold that the trial court did not abuse its discretion by denying Absher's motion to dismiss. We accept the State's concession and remand to the trial court to strike the $200 criminal filing fee from Absher's judgment and sentence.

FACTS

On May 17, 2018, Absher was driving at night with two passengers when his car spun off the road, rolling over at least once. His uncle was a passenger in the car and suffered a head wound. A Washington State Patrol trooper arrived at the scene and administered a field sobriety test. According to the statement of probable cause, the trooper smelled alcohol and, after the test, he believed that Absher was intoxicated. At the scene, Absher took a voluntary preliminary breath test that gave a result of .124.

After being taken into custody, Absher had his blood drawn for toxicology analysis at the crime lab. The State charged Absher with vehicular assault while driving under the influence of alcohol before the crime lab returned the results of the blood test.

At his omnibus hearing on July 10, 2018, Absher asked for a copy of the crime lab report. The trial court set trial for August 6, 2018.

On July 19, 2018, the State contacted the crime lab in an effort to get the toxicology results. On July 26, 2018, the State provided other documents to Absher, but still did not have the crime lab report. On July 31, 2018, the State gave Absher notice of which toxicologist would testify at trial. The next day, the State forwarded an e-mail from the toxicologist to Absher indicating the test was still not complete. On Friday, August 3, 2018—only two full days before trial—the State received and forwarded the crime lab report to Absher. The crime lab results indicated that Absher had a .10 blood alcohol content on the night of the accident, but the test detected no drugs. Absher's speedy trial period was set to expire on August 16, 2018.

Absher filed a motion to dismiss the charges under CrR 4.7 (Discovery) and 8.3 (Dismissal) to be heard on the day of trial. Absher argued that the late disclosure of the crime lab report and

several additional documents in the State's possession amounted to government misconduct that warranted dismissal of the charges. Although the trial court made a finding that the prosecutor's office "did everything in its power to get the lab results sooner," the trial court agreed that late disclosure of these documents so close to trial amounted to government misconduct. Verbatim Report of Proceedings (VRP) (Aug. 7, 2018) at 51-52.

Absher argued that the late disclosure prejudiced him because he needed to have an expert examine the crime lab's underlying data supporting the blood alcohol level test result in order to prepare an appropriate defense. Defense counsel said that although she had contacted at least two experts, they could not review the validity of the crime lab test and provide an independent analysis before the expiration of the speedy trial period. One expert asserted that a data audit of the blood alcohol result would take approximately six to seven hours to complete, but they would need at least three weeks to complete the audit due to other commitments.

The trial court commented that Absher had been on notice that blood test evidence would be introduced, so "the defense could have been preparing on how to properly cross-examine those results earlier." *Id.* at 52. The trial court noted that the defense could have sought an independent blood test or arranged to interview the crime lab toxicologist. The defense could have procured an expert earlier. Absher's counsel responded that she could not have an expert waiting to evaluate the crime lab's procedures until she had the underlying data from the crime lab. But defense counsel also acknowledged that she did not request underlying data until after she received the crime lab report.

The trial court ultimately suppressed several items, including late disclosed police reports, victim and witness statements, and an expert's accident reconstruction report. But the trial court

determined that the crime lab report would not be suppressed because its late disclosure did not prejudice Absher. The trial court offered a continuance up to the speedy trial date of August 16, 2018, to allow Absher time to obtain an expert to review the crime lab report. Absher argued the continuance was insufficient. The trial court denied Absher's motion to dismiss as well as his motion to reconsider.

Absher then proceeded to a bench trial on stipulated exhibits where the trial court found Absher guilty of vehicular assault. One of the stipulated exhibits that the trial court relied on was the crime lab report indicating that Absher's blood alcohol content was .10. The trial court found that the State had proved that Absher had an alcohol concentration of .08 or higher within two hours of the incident, shown by reliable blood analysis.

The trial court sentenced Absher to four months of confinement and $1,000 in legal financial obligations including a $200 criminal filing fee. The trial court subsequently found Absher indigent for purposes of appointing counsel for appeal.

Absher appeals.

ANALYSIS

I.      MOTION TO DISMISS UNDER CrR 4.7 AND 8.3

Absher claims that late disclosure of the crime lab report amounted to government misconduct that prejudiced him, requiring the charges against him to be dismissed. Absher argues that he also needed the underlying documentation supporting the crime lab report so an expert could evaluate the results. Absher claims this was necessary for counsel to be adequately prepared for trial.

We disagree and affirm the trial court's ruling.

A.        CrR 4.7 and 8.3 Violations and Standard of Review

CrR 4.7 sets forth general discovery obligations for prosecutors. The rule requires timely disclosure to the defendant of certain documents, including reports and the results of scientific tests, and imposes a continuing obligation to disclose. *See* CrR 4.7. Appropriate remedies for violating the criminal discovery rules include granting a continuance, dismissing the action, or issuing other appropriate orders. *State v. Barry*, 184 Wn. App. 790, 796, 339 P.3d 200 (2014); *see* CrR 4.7(h)(7)(i).

Under CrR 8.3(b), a court has discretion to dismiss a case due to government misconduct if there has been prejudice to the rights of a defendant. *Barry*, 184 Wn. App. at 796. "Governmental misconduct can be something as basic as simple mismanagement." *Id.* at 797 (citing *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997)). A defendant has the burden to show they suffered actual prejudice to justify dismissal. *State v. Krenik*, 156 Wn. App. 314, 320, 231 P.3d 252 (2010). "Prejudice under CrR 8.3(b) includes the right to a speedy trial and the right to adequately prepared counsel." *Barry,* 184 Wn. App. at 797. The defendant has the burden to show mismanagement and prejudice by a preponderance of the evidence. *State v. Brooks*, 149 Wn. App. 373, 387, 203 P.3d 397 (2009).

"Dismissal under CrR 4.7 or CrR 8.3 for a violation of a discovery order is an extraordinary remedy." *Barry*, 184 Wn. App, at 797. "We review discovery violation sanctions for an abuse of discretion." *Id.*

B.    Government Mismanagement

Absher argues the trial court's finding of government mismanagement was proper. The State does not appear to contest that finding. We agree that the late disclosure of the crime lab report amounted to government mismanagement under the court rules.

Late disclosure of material facts in discovery, particularly so close to trial, can constitute government misconduct. *See* CrR 4.7(h)(7); *State v. Salgado-Mendoza*, 189 Wn.2d 420, 433, 403 P.3d 45 (2017). The failure to disclose material facts does not have to be "'evil or dishonest'" to amount to misconduct. *Salgado-Mendoza*, 189 Wn.2d at 431(quoting *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980)).[1]

For example, in *Brooks*, the State was late in providing discovery of witness statements, reports from law enforcement, and recorded interviews of witnesses and defendants. 149 Wn. App. at 378-79. The defense received a significant amount of discovery only days before trial was scheduled to start. *Id.* at 377-78. On appeal, we concluded that the trial court did not abuse its discretion when it found government misconduct in these circumstances. *Id.* at 387.

Similarly, Absher was not provided reports of accident reconstruction until 11 days before trial. Additional police reports and technical analysis of the scene were provided a week before trial, and the crime lab report was provided the Friday before a Monday trial. The State did not

---

[1] The State seems to contend that the defendant must show the State acted with willful or gross negligence to justify dismissal under CrR 4.7. But the State has conflated CrR 4.7(h), which relates to regulation of discovery in superior court, with CrRLJ 4.7(g), which regulates discovery in courts of limited jurisdiction. The limited jurisdiction rule allows dismissal if the court determines that noncompliance with discovery rules was the result of willful or grossly negligent conduct. *Compare* CrRLJ 4.7(g)(7)(i)-(ii), *with* CrR 4.7(h)(7)(i). Here, the applicable rule is CrR 4.7(h). The superior court rule does not contain the same language. *See* CrR 4.7(h)(7). Willful violation or gross negligence is not necessary to allow dismissal under CrR 4.7(h)(7).

behave maliciously, but it did provide a significant amount of discovery, some of it central to the State's case, only days before trial was scheduled to begin.

We conclude that the trial court did not abuse its discretion when it found government mismanagement in this case.

C.    Prejudice

Absher argues that the late disclosure of the crime lab report caused prejudice because he did not have enough time to prepare an expert to address the crime lab report before the speedy trial deadline. The trial court did not abuse its discretion when it determined that Absher suffered no actual prejudice because he was on notice that the crime lab results would be used in this case, he could have partially prepared an expert in advance, and he did not seek a continuance to the speedy trial deadline even though a continuance was offered.

A defendant seeking dismissal under CrR 8.3 must prove prejudice by a preponderance of the evidence. *Brooks*, 149 Wn. App. at 387. Actual prejudice is more than just the mere possibility of prejudice. *Krenik*, 156 Wn. App. at 320. Prejudice can be shown if new facts interjected into the case force a choice "between the right to a speedy trial and the right to prepare an adequate defense." *Id.* at 321.

In *Krenik*, a witness revealed for the first time at trial the existence of a camera that could have recorded the incident in question. *Id.* at 317. Krenik argued that the recording might include evidence that would help her case. *Id.* at 321. Krenik moved for dismissal and the trial court denied the motion. *Id.* at 316. Division One affirmed, concluding that Krenik was not entitled to dismissal because she did not show actual prejudice. *Id.* at 321-22. Krenik needed to show more than just the possibility that exculpatory information could be on the recording. *Id.* at 321. She could have

asked for a continuance to request access to the recording to determine if the contents were, in fact, prejudicial, but she did not do so. *Id.*

Absher relies on *Michielli,* 132 Wn.2d 229, where the State added four additional charges five days before trial was set to begin. The trial court dismissed for government misconduct under CrR 8.3. *Id.* at 233-34. The Washington Supreme Court affirmed, concluding that the surprise addition of new charges so soon before trial forced the defendant to choose between his right to a speedy trial and his right to effective assistance of counsel. *Id.* at 245-46.

In contrast, in *State v. Cannon*, 130 Wn.2d 313, 922 P.2d 1293 (1996), the Supreme Court affirmed the trial court's conclusion that there was no prejudice. In that case, trial was delayed in part to allow for lab analysis of Cannon's blood and some paint chips. *Id.* at 327-28. Despite the fact that the lab results for both tests were returned on the eve of trial, the court concluded that there was no surprise and that no new facts were interjected by the reports. *Id.* at 328-29. Trial counsel had been "placed on notice from the time of charging that the State intended to introduce scientific evidence relating to blood samples and paint chips in order to tie Cannon to the crime." *Id.* at 329.

This case is more like *Cannon* and *Krenik* than *Michielli.* As in *Cannon,* the defense was aware that Absher's blood alcohol content was going to be an issue at trial and that the State would present the crime lab's results. The defense also knew the results of Absher's preliminary breath test taken that evening before his blood was drawn. Thus, the crime lab report interjected no new facts that required making a choice between Absher's speedy trial rights and his right to effective assistance of counsel. The trial court noted that Absher could have taken numerous steps in

advance of receiving the crime lab results in order to be properly prepared for cross-examination and for an expert to verify the test results.

Moreover, as in *Krenik,* Absher did not request a continuance up to the end of his speedy trial period. Absher argues the speedy trial period was insufficient to allow an expert to adequately prepare by reviewing underlying crime lab documents and procedures. But the trial court made multiple findings on the record to contradict the assertion that Absher was deprived of sufficient time to prepare. With 13 days remaining in the speedy trial period, Absher's expert said a data audit of the blood alcohol result would take approximately 6 to 7 hours to complete. Absher was on notice that lab tests would be used, he did not prepare to cross-examine the crime lab toxicologist by requesting background documents earlier, he made no attempt to procure an expert witness who could do an independent test or observe the crime lab process, he did not seek to interview the crime lab toxicologist, and he did not ask for a continuance within the speedy trial deadline to attempt to prepare an expert witness.

"[D]ismissal for a discovery violation is an extraordinary remedy" that applies only in rare cases. *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014). Because Absher did not prove he was prejudiced by a preponderance of the evidence, we conclude that the trial court did not abuse its discretion when it declined to dismiss the charges against him.

## II. LEGAL FINANCIAL OBLIGATIONS

Absher challenges the imposition of the criminal filing fee because he is indigent.

Courts are specifically prohibited from imposing a $200 criminal filing fee on indigent defendants. RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). Absher was sentenced after this restriction became effective. "Indigence" is defined as a person

9

on certain types of public assistance or who has an annual income after taxes below 125 percent of the federal poverty level. RCW 10.101.010(3)(a), (c).

The State concedes that Absher was indigent, noting the trial court entered an order of indigency for this proceeding. In light of the State's concession, the criminal filing fee must be stricken from his judgment and sentence.

## CONCLUSION

We affirm the trial court's ruling denying Absher's motion to dismiss. We remand to the trial court to strike the $200 criminal filing fee from Absher's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Sutton, J.