IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83558-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MICHAEL S. ABBOTT, | |
| Appellant. | |

CHUNG, J. — The State charged Michael Abbott with assault in the second degree and tampering with a witness, both with domestic violence designations, based on an incident in which he beat, strangled, and threatened to kill his girlfriend, Elizabeth Pyper. Pyper made an audio recording as the altercation occurred. Abbott contends the trial court violated the Washington Privacy Act by admitting Pyper's audio recording of the assault. He also challenges the trial court's failure to dismiss his case for discovery violations, and he raises confrontation clause violations based on the trial court's denial of his request to admit certain impeachment evidence. We affirm.

FACTS

Michael Abbott called 911 to report that his girlfriend, Elizabeth Pyper, had assaulted him and refused to leave his home. Responding officers noted the odor of alcohol on Abbott. Initially, the officers detained Pyper in handcuffs. Pyper told the officers that Abbott came home intoxicated, spit on her, pulled her hair, and

kicked her in the ribs. She also reported that Abbott strangled her. One of the officers noted redness turning to bruising on Pyper's neck. The officers called the fire department, and firefighter Patrick Boltz evaluated her injuries two separate times that evening.

While speaking with the police, Pyper revealed that she had recorded the altercation on her phone. After listening to the audio recording, the officers arrested Abbott for assault in the fourth degree. Officers then transported Abbott to jail. Detective Christopher Edwards conducted an investigation into Pyper's allegations. Shortly after, the State charged Abbott with one count of assault in the second degree with a domestic violence designation.

Abbott called Pyper from jail multiple times. During one of the phone calls, Abbott told Pyper to come to his arraignment to say, "they scared [her] and they made [her] angry and they threatened [her] with jail so [she] lied." Pyper understood Abbott to be requesting she recant her statements to the police.

The State subsequently amended the charging document to include one count of tampering with a witness with a domestic violence designation. A jury convicted Abbott on both second degree assault and witness tampering and returned a special verdict that Abbott and Pyper were intimate partners for both convictions. The judge imposed a standard range sentence of ten months incarceration.

On appeal, Abbott raises challenges to several evidentiary decisions by the trial court. He also argues that cumulative error requires reversal.

DISCUSSION

I.    Admission of Evidence as an Exception to the Washington Privacy Act

Abbott claims the trial court improperly admitted the audio recording under the threat exception to the Washington Privacy Act (WPA) ch. 9.73 RCW. The WPA prohibits the recording of a "[p]rivate conversation . . . without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b). Generally, information obtained in violation of RCW 9.73.030 is inadmissible in a civil or criminal case. RCW 9.73.050. However, conversations "which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands" may be recorded with the consent of one party to the conversation. RCW 9.73.030(2)(b).

We review alleged violations of the WPA de novo. State v. Bilgi, 19 Wn. App. 2d 845, 855, 496 P.3d 1230 (2021). "[S]ince whether the 'facts' are encompassed by the statutory protections presents a question regarding statutory interpretation, de novo review is the appropriate standard of review." State v. Kipp, 179 Wn.2d 718, 728, 317 P.3d 1029 (2014).

Neither party disputes that Pyper made the recording without consent from Abbott. Abbott contends the recording was inadmissible for two reasons: first, because it did not convey a true threat of bodily harm and second, because several of the statements were made in his private conversation with his mother, which Pyper recorded without his or the mother's consent.

A. True Threat

Abbott argues that the only statement he made directly to Pyper, that he "should end [her]. . . life now," was not a true threat trigging the WPA exception allowing one-party consent. The concept of a "true threat" arises from criminal cases due to the possible criminalization of otherwise constitutionally protected speech. See, e.g., State v. Johnson, 156 Wn.2d 355, 362-64, 127 P.3d 707 (2006) (limiting bomb threat statute, RCW 9.61.160(1), to true threats as it would otherwise criminalize protected speech). In such cases, courts have held a "true threat" is a statement " 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual].' " Johnson, 156 Wn.2d at 361 (quoting United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir. 1990)). Whether a statement is a true threat is determined under an objective standard focusing on the speaker. Johnson, 156 Wn.2d at 361.

The cases Abbott cites in support of his "true threat" argument discuss the requirement of a "true threat" in criminal cases; neither case addresses the WPA and its threat exception. See Johnson, 156 Wn.2d at 362-64 (addressing bomb threat statute, RCW 9.61.160(1)); State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004) (addressing criminal harassment statute, RCW 9A.46.020(1)(a)(i)). Abbott does not provide legal support for his claim that RCW 9.73.030(2)(b) applies exclusively to "true threats." Where no authorities are cited in support of a

proposition, the court "may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Without such authority, we decline to interpret the word "threat" in the WPA to require a "true threat" as defined by caselaw interpreting criminal statutes.

While we decline to conclude the WPA exception requires a true threat, Abbott's statements clearly reach that threshold. Abbott yelled at Pyper that he "should end [her] fucking life now." When his mother attempted to intervene, he continued to make statements proposing violent acts toward Pyper, saying he was "about to stomp her fucking head in," and "about to just kill her and fucking bury her." Pyper testified that the threats occurred in the context of a violent physical altercation, during which Abbott wrapped his arm around her neck from behind and pulled her out of chair. He tightened his grip and she could not breathe. He also kicked her in her ribs and back. A reasonable person in Abbott's position would foresee that threats, made while kicking and strangling Pyper, would be interpreted as a serious expression of his intent to inflict bodily harm on her. The statements constituted true threats. See State v. Kohonen, 192 Wn. App. 567, 575-76, 370 P.3d 16 (2016).

Here, regardless of whether the statute's exception is limited to a true threat, the trial court properly admitted the audio recording under RCW 9.73.030(2)(b) because Abbott's recorded statements conveyed threats of bodily

harm and thus could be lawfully recorded with the consent of only one party to the conversation.

B. Private Conversation

Abbott claims that Pyper was not a participant in his private conversation with his mother where he said he was "about to stomp [Pyper's] . . . head in" and that he was "about to just kill her and … bury her." According to Abbott, these recorded statements should have been excluded because neither he nor his mother consented to recording. We disagree.

The WPA protects only private conversations. RCW 9.73.030; Kadoranian by Peach v. Bellingham Police Dep't, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992). For the purposes of the WPA, "[a] communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable." Kipp, 179 Wn.2d at 729. Factors bearing on reasonableness of the expectation of privacy for a conversation include duration, subject matter, location, presence of third parties, and the role of the nonconsenting party and relationship to the consenting party. Id. "Generally, where another person is present, a party to the communication has no expectation of privacy." State v. Babcock, 168 Wn. App. 598, 607, 279 P.3d 890 (2012).

Here, Pyper's trial testimony and the audio recording confirmed that Abbott's statements to his mother were made in Pyper's immediate presence. The exchange was not a private conversation between Abbott and his mother.

6

Instead, the transcribed recording shows an altercation between Abbott and

Pyper, with his mother interjecting:

> MALE SPEAKER [Abbott]: I'm about to fucking kill her --
> FEMALE SPEAKER [Pyper]: [INAUDIBLE].
> SECOND FEMALE [Mother]: No.
> MALE SPEAKER: -- and bury her out back.
> SECOND FEMALE: No. Leave her alone.
> FEMALE SPEAKER: No (crying).
> SECOND FEMALE: Leave her alone. Leave her alone. Stop.

Given Pyper's presence and direct involvement in the exchange, Abbott

has no reasonable expectation of privacy in the statements he made to his

mother. The statements were not part of a private conversation and, therefore,

were not subject to the protections of the WPA.

II.    Expert Evidence Relating to Strangulation

Abbott argues the trial court erred by allowing "expert testimony" from

firefighter Patrick Boltz[1] and Detective Christopher Edwards because the State

failed to properly disclose their expert testimony as required by CrR 4.7(a)(2)(ii).[2]

As a result of this discovery violation, Abbott contends the trial court should have

granted his request to dismiss the case against him pursuant to CrR 8.3(b).

While we agree the State failed to comply with its disclosure obligations under

CrR 4.7(a)(2)(ii), Abbott does not establish actual prejudice that would have

required dismissal of the case.

---

[1] Boltz has EMT training and responded to the incident in this capacity.
[2] Appellant cites to CrR 4.7(a)(1)(vii), which does not exist. We presume he refers to CrR 4.7(a)(2)(ii), which pertains to disclosure of expert evidence.

Before trial, the State identified both Boltz and Edwards as potential witnesses. The State also had provided "records of Mr. Boltz's interaction," a transcript of a phone call between Pyper and Edwards, and Edwards's report.

During trial, Boltz and Edwards both testified about Pyper's visible injuries and her allegation of strangulation. Boltz testified that responding officers had notified him that Pyper reported being strangled or choked. Consequently, Boltz evaluated Pyper's airway and lung sounds and noticed "some redness around her neck." The State asked Boltz, "Is it common in your experience to go out and—to calls for people reporting that they've been strangled?" Boltz answered affirmatively, and the State then asked, "Based on your experience dealing with people that are reporting strangulation, would you expect to see more injuries than what you saw from this individual based on what she was reporting?" Abbott objected to this as "[e]xpert opinion testimony that's never been disclosed to the defense." The trial court overruled the objection, and Boltz answered, "I would say her injuries were consistent with other patients I've seen who were—who were choked."

Abbott moved to dismiss the case, in part due to Boltz's undisclosed expert testimony as a violation of CrR 4.7. The trial court denied the motion to dismiss, noting that "the characterization that this is an expert opinion is somewhat mischaracterizing the testimony," and concluding "I did not take his statement as to be the bell ringing expert opinion."

Subsequently, Abbott requested an offer of proof as to the nature of Edwards's testimony to prevent a similar issue. The State explained its intention to ask Edwards "about his experience as a detective, whether he viewed photographs in this case, and whether or not he would have expected to see more injuries—to the neck based on his experience, similar to testimony of—of Mr. Boltz." Abbott objected to this evidence as undisclosed expert testimony in violation of CrR 4.7(a). The trial court declined to make a blanket ruling in advance of the testimony, stating, "It is not uncommon for detectives to discuss their experience in the field."

When Edwards testified about the photographs of Pyper's neck taken on the day of the altercation, the State asked about his experience with strangulation cases: "Based on your training and experience, would you have expected to see additional injuries on the neck from the type of strangulation that was described in this case?" After Abbott objected and the trial court overruled the objection, the detective answered "no."

Under CrR 4.7(a)(2)(ii), the prosecutor has the obligation to disclose "any expert witnesses whom the prosecuting attorney will call at the hearing or trial, the subject of their testimony, and any reports they have submitted to the prosecuting attorney."[3] The purpose of the rule is to prevent a defendant from being prejudiced by surprise, misconduct, or arbitrary action by the government. State v. Cannon, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996). If the State fails to

---

[3] Appellant quotes CrR 4.7(a)(2)(ii) but cites to CrR 4.7(a)(1)(vii), which does not exist.

disclose such evidence or to comply with a discovery order, a defendant's constitutional right to a fair trial may be violated and the trial court can grant a continuance, dismiss the action, or enter another appropriate order. State v. Barry, 184 Wn. App. 790, 796, 339 P.3d 200 (2014).

The court has discretion to dismiss under CrR 4.7(h)(7) or CrR 8.3(b), but the remedy "is 'generally available only when the defendant has been prejudiced by the prosecutor's actions.' " State v. Krenik, 156 Wn. App. 314, 320, 231 P.3d 252, 255 (2010) (quoting State v. Cannon, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996)). "[T]he defendant must show actual prejudice; the mere possibility of prejudice is insufficient." Krenik, 156 Wn. App. at 320. We review the trial court's decision to dismiss pursuant to CrR 4.7(h)(7) or CrR 8.3(b) for manifest abuse of discretion. Id. A trial court abuses its discretion if that discretion is exercised on untenable grounds or for untenable reasons. State v. Grenning, 169 Wn.2d 47, 57, 234 P.3d 169 (2010).

During oral argument on appeal, the State conceded that the statements by Boltz and Edwards amounted to expert testimony.[4] Therefore, the State had the duty to disclose them as expert witnesses, as well as the subject of their testimony and their reports. CrR 4.7(a)(2)(ii). The record shows that Abbott had reports from both Boltz and Edwards. During cross-examination, Abbott elicited that Detective Edwards's report did not include the photographs of Pyper taken

---

[4] Wash. Court of Appeals oral argument, State v. Abbott, No. 83558-1-I (Jan. 12, 2023), at 9:15-9:29, 10:27-10:33. Video recording by TVW, Washington State's Public Affairs Network, https.tvw.org/watch/?eventID= 2023011186.

on the day of the altercation or the statements he made during his testimony about strangulation. Abbott obtained similar testimony from firefighter Boltz, who stated that his report did not provide an opinion that his findings were consistent with somebody who had been choked "because that's not how we write our reports." The State's failure to disclose that Boltz and Edwards would testify about Pyper's injuries as compared to evidence of strangulation in other cases was a violation of CrR 4.7(a)(2)(ii).

The trial court erred in ruling that Boltz and Edwards did not provide expert testimony. Moreover, the State violated its discovery obligations by failing to disclose the content of this expert testimony. By failing to apply CrR 4.7(a)(2)(ii), the trial court exercised its discretion on untenable grounds, which was an abuse of that discretion. See Grenning, 169 Wn.2d at 57-58 (failure to apply the mandatory disclosure provision in CrR 4.7(a)(1)(v) was an exercise of discretion on untenable grounds and, therefore, an abuse of discretion). The result was admission of improper opinion testimony from both Boltz and Edwards.

Although it constituted error, the admission of the undisclosed opinion testimony does not require reversal unless "within reasonable probability, the statement materially affected the outcome." See State v. Greiff, 141 Wn.2d 910, 928, 10 P.3d 390 (2000) (applying the standard after concluding that improper admission of hearsay testimony after failure to disclose is not an error of constitutional magnitude). Where the State has failed to produce evidence under CrR 4.7(a), the error is harmless when the properly admitted evidence is so

overwhelming as to necessarily lead to a finding of guilt. Grenning, 169 Wn.2d at 59.

Here, Pyper's audio recording captured the altercation as it unfolded. The jury listened to the audio several times, including once with Pyper testifying in parallel, describing the events the jury heard. She noted when Abbott had his arm around her neck and was choking her. The State also played the audio during closing argument and the jury heard Pyper crying, gasping, and coughing. The State also called attention to details throughout the recording, such as Pyper screaming at the beginning and then struggling to speak and breathe, with her voice fading away while Abbott strangled her. The content of the audio, along with Pyper's testimony, provided overwhelming evidence in support of the charged second degree assault by strangulation. We conclude within reasonable probability that the improper expert testimony did not materially affect the outcome of the trial.

Moreover, Abbott's requested remedy was dismissal under CrR 8.3(b), which is an "extraordinary remedy, one that the trial court should use only as a last resort," and requires actual prejudice. Krenik, 156 Wn. App. at 320. Abbott cannot demonstrate actual prejudice. Whether a strangulation occurred was clearly at issue in this case, given that the State charged Abbott with assault by strangulation. Abbott's trial brief described the lack of corroborating physical evidence of strangulation by those who evaluated Pyper after the altercation. In light of the issues and defense, firefighter Boltz's and Detective Edwards's

opinion testimony on physical manifestations of strangulation should not have surprised Abbott. Abbott fails to show actual prejudice from the admission of Boltz's or Edwards's testimony that required dismissal of his case.

III.     Exclusion of Impeachment Evidence

Abbot argues the trial court violated his right to confrontation by excluding Snapchat messages[5] and photographs as impeachment evidence. Both the federal and state constitutions guarantee the right to confront and cross-examine adverse witnesses. U.S. Const. amend. VI; Wash. Const. art. I, § 22; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). Yet the right to cross-examination is not absolute. Id. "The confrontation right and associated cross-examination are limited by general considerations of relevance." Id. at 621. A criminal defendant has no constitutional right to have irrelevant evidence admitted. Id. at 624; State v. Weaville, 162 Wn. App. 801, 818, 256 P.3d 426 (2011).

We review a trial court's decision to admit or exclude evidence for abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). We also review a court's limitation on the scope of cross-examination for manifest abuse of discretion. Darden, 145 Wn.2d at 619. A trial court abuses its

---

[5] Snapchat is a visual messaging application. The parties refer to "Snapchat messages" throughout the record below and on appeal. During trial, when Abbott refreshed Pyper's memory with an exhibit containing the message at issue, Abbott asked, "this is a text, not a Snapchat, right?" Pyper confirmed the message she reviewed was a text. Nevertheless, for consistency, we adopt the terminology employed by the parties and refer to the messages at issue as "Snapchat messages."

discretion when a decision is manifestly unreasonable or based on untenable grounds or reasons. Gunderson, 181 Wn.2d at 922.

### A. Exclusion of Snapchat Messages

Abbott requested admission of Snapchat messages between himself and Pyper as impeachment evidence. One of Pyper's messages said, "I'll have a chance to go in and talk to the Judge and myself the day of your arraignment and explain why I want it dropped."[6] Abbott argued to the trial court that the messages would have impeached Pyper's credibility by showing that she wanted the no-contact order lifted because "[t]his goes directly to Ms. Pyper's state of mind and to her credibility, and it impeaches what she has already said about him tampering with her." The trial court declined to admit the messages as substantive evidence but allowed Abbott to show Pyper the Snapchat messages to refresh her memory about the events.

Abbott claims excluding the messages as substantive evidence violated his right to confrontation. According to Abbott, "[t]he Snapchat messages at issue directly refuted the elements of" the witness tampering charge because Pyper essentially recanted, which "directly contradicts the tampering charge and calls her credibility into question."[7] But Abbott cross-examined Pyper after she

---

[6] The text of one Snapchat message was read into the record by the State. They were marked as Exhibit 19 for identification but used only to refresh Pyper's memory. The full and accurate text of the messages is unavailable because Exhibit 19 was not designated for review on appeal.

[7] Abbott fails to provide evidence of the content of the message or any legal analysis on their relevance, in contravention of RAP 10.3(a)(6), which requires "argument in support of the issues presented for review, together with citations to legal authority and references to relevant

refreshed her memory by viewing one of the messages. In response to his questions, Pyper confirmed that she sent the message after Abbott's arrest and release from jail, she wanted to go back to his home, and she sought to have the charges dropped and the protection order amended so they could talk. Abbott had the opportunity to elicit the gist of the messages through this testimony. Therefore, Abbott has not shown that the trial court abused its discretion or violated his confrontation rights by denying admission of the Snapchat messages.

B. Exclusion of Photographs

Abbott also sought to introduce impeachment evidence by calling his prior attorney to testify about photographs Pyper provided her. Abbott claimed the photographs were inconsistent with Pyper's testimony that she had not taken pictures after the incident and that the photographs would have shown bruising. Abbott claimed the photographs had been sent to the State before trial, but his prior attorney informed the court that she had no record or recollection of doing so. At trial, even though the witness and the evidence were available, Abbott did not move to admit the photographs until after Pyper had been excused. The trial court expressed concern about authentication of the photos, "the who, what, when, where, and why." The court declined to admit the photographs because of authentication issues: "[Y]our witness can testify about what she saw on her

---

parts of the record." He does not argue or explain how the trial court abused its discretion by declining to admit the messages.

neck. These have not—would not be able to have the foundation laid or authenticated. I'm not going to let the pictures come in." Abbott argues the trial court erred by denying admission of the photos as impeachment evidence, thus violating his right to confrontation.

The trial court denied admission of the photographs because Abbott could not authenticate them.[8] Authentication is "a condition precedent to admissibility" which "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901. "The evidentiary rule of authentication is a specialized rule of relevance: it is a logical condition of admissibility, in that the proffered item is identified with one of the parties in some manner so as to have significance to the action." State v. Rodriguez, 103 Wn. App. 693, 701, 14 P.3d 157, 162 (2000), aff'd, 146 Wn.2d 260, 45 P.3d 541 (2002). "Authentication is a process of establishing conditional relevance," and " '[u]nless evidence is in fact what it purports to be, it is not relevant.' " State v. Bashaw, 169 Wn.2d 133, 141, 234 P.3d 195 (2010), overruled on other grounds by State v. Guzman Nunez, 174 Wn.2d 707, 285 P.3d 21 (2012) (quoting

---

[8] In his reply brief and without any legal argument, Abbott claims the trial court should have recalled Pyper to authenticate the photographs. We do not review issues raised for the first time in the reply brief or without legal argument. RAP 10.3(a)(6), 10.3(b)(c). Under CrR 6.12(b), "A witness subpoenaed to attend in a criminal case is dismissed and excused from further attendance as soon as he or she has given his or her testimony-in-chief and has been cross-examined thereon, unless either party makes requests in open court that the witness remain in attendance." Whether a trial court should have recalled an excused witness is a matter of discretion, and this court reviews the decision for abuse of that discretion. State v. Williams, 118 Wn. App. 178, 183, 73 P.3d 376 (2003). Here, Pyper had been already been recalled for additional cross-examination before being fully excused days before Abbott sought admission of the photographs. In light of the multiple recalls and Abbott's late motion to introduce evidence that had not previously been disclosed to the State, the trial court did not abuse its discretion by declining to recall Pyper to authenticate the photographs.

ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON § 901.05(1), at 901-12 (4th ed. 2008)). Without authentication, the proffered evidence has not been identified "so as to have significance to the action," Rodriguez, 103 Wn. App. at 701, and therefore, lacks relevance. Irrelevant evidence is inadmissible. ER 402. Furthermore, a criminal defendant has no constitutional right to have irrelevant evidence admitted. Darden, 145 Wn.2d at 624. Therefore, the trial court did not abuse its discretion in denying admission of the photographs.

IV.     Cumulative Error

Abbott argues for reversal under the cumulative error doctrine. The cumulative error doctrine requires reversal when the combined effect of several errors denies the defendant a fair trial. State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). "The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial." Id. Here, while admitting the expert testimony that had not been previously disclosed was error, as discussed above, the error was harmless and, therefore, had no effect on the outcome of the trial. The cumulative error doctrine does not apply.

Affirm.

_____
Chung, J.

WE CONCUR:

_____Mann, J._____          _____Dwyer, J._____